## STATE, BY ITS ATTORNEY GENERAL, WARREN SPANNAUS, v. LLOYD A. FRY ROOFING COMPANY.

246 N. W. 2d 696.

October 22, 1976—No. 46116.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Assistant Solicitor General, and *Alan R. Mitchell,* Special Assistant Attorney General, for appellant.

*Shanedling, Phillips, Gross & Aaron* and *Bert M. Gross,* for respondent.

Heard before Sheran, C. J., and Kelly, Todd, and Breunig, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

The Minnesota Pollution Control Agency (PCA), as part of extended administrative and court proceedings concerning defendant, Lloyd A. Fry Roofing Company (Fry), issued an order directing Fry to conduct stack emission tests on emissions generated at its plant in Minneapolis. Fry did not seek direct judicial review of the validity of the order but refused to conduct the specified tests. The state then brought an action in which, among other things, it sought an injunction compelling Fry to conduct the tests. The district court refused to grant such an injunction on the ground that the PCA had no statutory authority to promulgate the regulation pursuant to which it issued the order in question and ordered partial summary judgment for Fry. We affirm.

It is not necessary to recite the facts leading to the presentation of the issues before this court as they are not in dispute. The sole questions raised on appeal are legal issues. The state contends that (1) Fry cannot collaterally attack the validity of PCA's order, and (2) the PCA has statutory authority to issue the regulation which was the basis for its order.

■ The state relies upon the following authorities to support its position on the first issue: (1) Minn. St. 115.05, subd. 10;[1] (2) various United States Supreme Court decisions holding that parties may not contest administrative actions in collateral proceedings when applicable statutes provide for review exclusively by direct appeal; (3) a series of United States Supreme Court decisions refusing to permit collateral attack on injunctions; and (4) cases and secondary authorities allegedly supporting the proposition that collateral attack on administrative decisions

---

[1] Minn. St. 115.05, subd. 10, provides: "If no appeal be taken from an order, rule, regulation, or other decision of the agency as herein provided, or if the action of the agency be affirmed on appeal the action of the agency in the matter shall be deemed conclusive, and the validity and reasonableness thereof shall not be questioned in any other action or proceeding, but this shall not preclude the authority of the agency to modify or rescind its action."

is generally not permitted. We find that these authorities do not support the state's contention that Fry's collateral attack upon this order is improper. Minn. St. 115.05, subd. 10, is not applicable to the present case. Minn. St. c. 115 deals with water pollution whereas all air pollution matters, such as the instant one are governed by Minn. St. c. 116.[2] Chapter 116 contains no provision comparable to § 115.05, subd. 10, prohibiting collateral attacks upon the validity of PCA orders governing water pollution, and we refuse to imply such a provision in c. 116.

We have carefully reviewed the United States Supreme Court decisions cited by the state which preclude collateral attack on administrative orders when governing statutes provide for exclusive review by means of direct appeal. However, these cases are not relevant to the present action in that, as discussed above, the governing statute—c. 116—does not provide that the exclusive means of review shall be direct appeal.

The United States Supreme Court cases cited by the state which prohibit collateral attack on injunctions are based on the principle that a proper respect for the judicial process requires that no party may, in effect, unilaterally judge his own case and determine that an injunction is invalid. We decline to accept the proposition that we should accord to administrative decisions the same presumptive validity which is traditionally accorded to court-issued injunctions. Such a result would be completely at odds with the concept of an agency as a creature of statute whose authority and jurisdiction are strictly prescribed by the legislature and subject to judicial review by the courts. We have emphatically rejected the proposed analogy between agency orders and judicial injunctions and have held that any action of an administrative agency which is in excess of its statutory power is subject to collateral attack. State ex rel. Spurck v. Civil Serv. Bd. 226 Minn. 253, 32 N. W. 2d 583 (1948).

Finally, we reject the state's assertion that collateral attacks on administrative decisions are generally not permitted. This

---

[2] See, Note, 56 Minn. L. Rev. 997, 998.

alleged rule is supported neither by the decisions nor by the secondary authorities in this field. The state relies most heavily on the case of St. Regis Paper Co. v. United States, 368 U. S. 208, 82 S. Ct. 289, 7 L. ed. 2d 240 (1961). However, a careful reading of this decision reveals that it actually undermines rather than supports the state's position on this issue. The state also cites sections of Professor Kenneth Culp Davis' Administrative Law Treatise as ostensibly supporting its position, but we find again that this authority actually reaches the opposite conclusion:

"In general, a defendant in a civil or criminal proceeding brought to enforce an administrative order or regulation may defend on the ground of invalidity of the order or regulation * * *. The natural assumption is that one may not be held civilly or criminally liable for violating an invalid order or regulation. The tradition is deeply embeded that even statutes may be challenged by resisting enforcement." 3 Davis, Administrative Law Treatise, § 23.07, p. 320.

See, also, Jaffe, Judicial Control of Administrative Action, 196; 2 Am. Jur. 2d, Administrative Law, § 515, p. 323.

Our decisions are in accord with the general rule stated by Professor Davis that collateral attack on administrative agency orders in enforcement proceedings is proper. See, Martin v. Wolfson, 218 Minn. 557, 16 N. W. 2d 884 (1944); State ex rel. Spurck v. Civil Serv. Bd. *supra*; State ex rel. Ludwig v. City of Bemidji, 298 Minn. 27, 212 N. W. 2d 876 (1973).

We conclude that the trial court properly determined that Fry's collateral attack on the PCA order in the present enforcement proceedings is not barred by Fry's failure to challenge the order through some direct appeal procedure.

█ The record in this case indicates that Fry has on several occasions conducted at its own expense emission tests and furnished the information obtained to the PCA. The expense of these tests is not minimal. Further, in a Federal court proceeding, City of Minneapolis v. Lloyd A. Fry Roofing Co. (D. Minn.) No. 4-69 Civil 91, September 21, 1971 (unreported decision by

Judge Gunnar H. Nordbye), Fry's emissions were found to meet the standards of the PCA. Fry has never denied, during the course of these proceedings, that the PCA possesses statutory authority to conduct its own tests upon Fry's emissions at the PCA's expense pursuant to Minn. St. 116.091, subd. 3.[3] Nor does Fry object to the PCA's conducting such tests at the agency's expense. However, Fry refuses to expend additional funds of its own for carrying out emission tests, absent specific statutory authority permitting the PCA to order such additional procedures.

The state does not dispute the fact that nowhere in c. 116 is the PCA explicitly vested with authority to issue orders or regulations authorizing orders of the type here involved. Rather, the state seeks to infer the existence of such power from other powers which are explicitly granted to the PCA by statute. Analysis of c. 115 and c. 116, and of their legislative history, however, reveals that to read such authority into the statutes would contravene their language and intent.

As was the case with the first issue of whether agency orders may be collaterally attacked, the distinction between c. 115, governing water pollution, and c. 116, governing air pollution, is critical. While c. 115 grants to the PCA broad powers to issue regulations and orders in water pollution matters, c. 116 grants such power only in narrowly circumscribed instances. Chapter 115, which was adopted prior to c. 116, specifically authorizes the issuance of the type of regulation and order which are the basis of the present enforcement proceedings in water pollution matters.[4] Section 115.03, subd. 1(e), invests the PCA, in water pollution matters, with the following authority:

---

[3] Minn. St. 116.091, subd. 3, provides: "Whenever the agency deems it necessary for the purposes of chapter 116, the agency or any member, employee, or agent thereof, when authorized by it, may enter upon any property, public or private, for the purpose of obtaining information or conducting surveys or investigations."

[4] Minn. Reg. A P C 3(L)(1), which the state contends authorized the order here at issue, provides: "Responsible Persons to Have Tests Made.

"To adopt, issue, reissue, modify, deny or revoke, enter into or enforce reasonable orders, permits, variances, standards, regulations, schedules of compliance, and stipulation agreements, under such conditions as it may prescribe, in order to prevent, control or abate water pollution, or for the installation or operation of disposal systems or parts thereof, or for other equipment and facilities * * *."

In contrast, Minn. St. 116.07, subd. 4, which is the counterpart of Minn. St. 115.03, subd. 1(e), in that it provides for the issuance of regulations consistent with the statutory purposes, does not grant to the PCA any general power to issue "orders." We decline to read into the language of c. 116 the explicit language of c. 115, authorizing the issuance of the type of regulation which would permit the PCA order herein. As the trial court concluded in the portion of its memorandum discussing this issue:

"* * * Although the reason for the distinction between the powers of the PCA in water pollution matters under 115.03 and its powers in air pollution matters [under § 116.07] is unclear, it is significant. Had the legislature intended the PCA to have the general power to issue and enforce orders in air, noise and solid waste pollution matters, it could easily have so provided in the manner it did in 115.03."

Further support for the conclusion that the PCA has no general power to issue orders in air pollution matters is found in Minn. St. 116.11,[5] which authorizes the PCA to issue emergency

---

Upon order of the Director, all persons responsible for emission of air contaminants shall make or have made tests to determine the characteristics and amount of emission of air contaminants from any source. The Director may specify testing methods to be used in accordance with good professional practice and may observe the testing. All tests shall be conducted by reputable, qualified personnel. The Director shall be given two copies of the test methodology and results in writing and signed by the person responsible for the tests."

[5] Minn. St. 116.11 provides: "In the event that there is imminent and substantial danger to the health and welfare of the people of the state, or of any part thereof, as a result of the pollution of air, land or water;

orders under various carefully delineated circumstances. A reading of § 116.11 makes it abundantly clear that the legislature was well aware of the manner in which the PCA could be given the power to issue orders in air pollution matters, so its failure to grant such power in nonemergency circumstances must be interpreted as a deliberate limitation of the PCA's powers in such cases.

We conclude that the PCA lacked statutory authority to issue an order, or a regulation authorizing an order, requiring Fry to conduct area emission tests at its own expense. The decision of the trial court refusing to enforce the order on the ground that it was based on an invalid regulation is affirmed.[6]

Having determined that the PCA order herein is invalid and unenforceable because it exceeds the PCA's statutory authority under c. 116, we do not reach Fry's contention that the order was invalid because the procedure by which it was issued violated constitutional guaranties of due process.

Affirmed.

---

upon such finding, the agency may by emergency order direct the immediate discontinuance or abatement of such pollution without notice and without a hearing * * *. * * * Such agency order shall be appealable to the appropriate district court and the provisions of chapter 15 shall govern the procedure and scope of review on such appeal."

[6] If the PCA needs such authority to effectively carry out its function regarding air pollution, the proper place for it to seek such authority is the legislative body which created the agency and specified its powers. Courts cannot properly aid the agency by construing the statute to confer upon it implicit authority, when to do so would contravene the legislature's apparently deliberate failure to explicitly grant it such authority.