**CAN MANUFACTURERS INSTITUTE, INC., et al., Appellants,**

v.

**STATE of Minnesota, Minnesota Pollution Control Agency, an Agency of the State of Minnesota, and its Executive Director, Respondents.**

**No. 48349.**

Supreme Court of Minnesota.

Sept. 7, 1979.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, John M. Mason and Peter S. Hendrixson, Minneapolis, Chadwell, Kayser, Ruggles, McGee & Hastings, C. Lee Cook, Jr., and John C. Berghoff, Jr., Chicago, Ill., for appellants.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Eldon G. Kaul, Asst. Atty. Gen., Stephen F. Befort and Jocelyn Furtwangler Olson, Sp. Asst. Attys. Gen., Roseville, for respondents.

Janice M. Symchych and Stephen J. Snyder, Minneapolis, for amicus Sierra Club.

PETERSON, Justice.

The constitutionality and validity of Minnesota's Package Review Act (Minn.St. 116F.06) and the regulations for package review (Minn.Reg. SR–1 to SR–6) promulgated under the statute by the Minnesota Pollution Control Agency (MPCA) are the subject of this appeal. Section 116F.06 was enacted on May 24, 1973 (L.1973, c. 748, § 6); the regulations became effective on December 31, 1974.

The complaint for declaratory judgment and the motion for injunctive relief were initiated in May 1975 by plaintiffs, five industry associations representing manufacturers of packages and containers, and nine manufacturers of packages, containers, and closures. Defendants are the state of Minnesota, the MPCA, and the MPCA's executive director. Final judgment for defendants was entered on August 17, 1977, but the trial court issued an order enjoining enforcement of the statute and the regulations pending plaintiffs' appeal of the judgment to this court.

Minn.St. c. 116F (the Act) deals with materials entering the solid waste stream and the recycling of materials, with the stated purpose of encouraging the reduction of the amount and kind of materials entering the solid waste stream and the reuse and recycling of materials. The statutory rationale is that solid waste represents discarded materials and energy resources and constitutes an economic burden upon the persons of this state. § 116F.01.

The Act provides for a multifaceted approach to the solid waste problem, including § 116F.06, which provides for review of new or revised packages and containers[1] entering the Minnesota market. The powers and

1. Minn.St. 116F.06 refers to both packages and containers. In this opinion, the terms will be used interchangeably and will be assumed to have identical meanings. Hence, the word "package" is a reference to both.

duties of the MPCA in implementing the Act are set forth in § 116F.05, subd. 1, and include encouraging "the extension of the useful lives of products, and the reduction of both solid waste generation and solid waste management costs." § 116.05, subd. 1(f). See, also, § 116F.05, subd. 3.

Section 116F.06 authorizes the MPCA to review packaging innovations as a method of controlling solid waste generation and wasteful use of energy and natural resources and to prevent the introduction of packages which would create additional solid waste problems or be inconsistent with the state's environmental policies. § 116F.06, subd. 2. The statutory scheme, the only scheme of its type in this country, consists of the following procedures: The MPCA is authorized to review new or revised packages except when the revisions involve only color, size, shape, or printing. Any person, including the package user, may submit the package to the MPCA for review, and the MPCA staff has 120 days to review it. § 116F.06, subd. 3. Unless the MPCA acts within the 120-day period, it may not thereafter prohibit the sale of the package under review. If the MPCA disapproves a package, the manufacturer of the package may voluntarily withdraw it from further consideration and resubmit it at a later time; or, the MPCA may, after notice and hearing under Minn.St. c. 15, issue an order prohibiting the sale of the package in the state. § 116F.06, subd. 2. If the decision of the MPCA is to prohibit the package, the Minnesota Environmental Quality Board (MEQB) may review the proposed action. § 116F.06, subd. 2. Any MPCA prohibition of a package remains in effect only until the last legislative day of the next following legislative session, unless extended by law. § 116F.06, subd. 2. In other words, the legislature must enact the prohibition into law or the prohibition lapses. The MPCA, in effect, acts on this issue as factfinder for the legislature.

The regulations at issue in this case were noticed and adopted pursuant to Minn.St. 1974, § 15.0412, and are comprised of six sections, Minn.Reg. SR–1 to SR–6.[2] Among other things, the regulations detail the factors the MPCA will consider in reviewing a new package, the review procedure the MPCA will follow, the information about the package the MPCA will require in order to conduct its review, and the type of package that will be exempt from review by the MPCA.

Plaintiffs use two different arguments in challenging various aspects of the regulatory scheme. One, they broadly challenge the entire regulatory scheme (both the statute and the regulations) on constitutional grounds, contending that it imposes an undue burden on interstate commerce and that it is so vague and imprecise that it constitutes a taking of plaintiffs' property without due process of law. We reject these constitutional attacks. Two, they attack in several respects the regulations adopted by the MPCA, contending that some of the regulations are contrary to legislative intent under § 116F.06. We accept plaintiffs' arguments on these points.

## I. Constitutional Issues

Plaintiffs contend the statute and the regulations unduly burden interstate commerce. It is fundamental that the Commerce Clause prevents a state from erecting barriers to the free flow of interstate commerce. This is so even if the Congress has not itself exercised its power under the Commerce Clause. Nevertheless, state legislation, designed to serve legitimate state interests and applied without discrimination against interstate commerce, does not in all circumstances violate the Commerce Clause even though it affects commerce. *Raymond Motor Transp. Inc. v. Rice*, 434 U.S. 429, 440, 98 S.Ct. 787, 793, 54 L.Ed.2d 664, 674 (1978). Whether a state's regulations impermissibly impact upon interstate commerce must be determined by weighing the nature and extent of the state's regulatory interests against the extent of the burden imposed on the course of interstate commerce. As the United States Supreme Court framed the test in *Pike v.*

2. 6 MCAR § 4.

*Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178 (1970):

"Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. City of Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 816, 4 L.Ed.2d 852. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

Applying the *Pike* test, it is clear the only element of the test at issue in the present case is whether the burden imposed on interstate commerce by the package review process is clearly excessive in relation to the legitimate state interest undergirding the regulatory scheme. There is no question that § 116F.06 and the MPCA's regulations regulate evenhandedly. There is no showing that the statute and the regulations are designed or will operate in favor of local interests. There is no showing that the regulatory scheme was designed to interfere with interstate commerce. There can be little doubt that the package review process is designed to effectuate a legitimate state interest, for a regulatory scheme designed to conserve resources, decrease pollution, and protect the environment unquestionably deals with state interests of great magnitude.

There are generally two positions regarding the method a court should use in comparing the burdens on interstate commerce to the state interest underlying a regulatory scheme. The traditional view is that the burden on interstate commerce must actually be weighed and balanced against the benefits provided by the regulations to the state. See, *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); *Raymond Motor Transp. Inc. v. Rice, supra.* Another view is that actual balancing does not take place; if an end result of the regulations is to promote a legitimate state interest and the regulatory scheme is a rational means of attaining that end, as long as the asserted state interest is not illusory or problematical, a court should not second guess legislative judgment that the state interests promoted by the regulations outweigh any incidental effects on interstate commerce. See, *Brotherhood of Locomotive Firemen & Enginemen v. Chicago, Rock Island & Pacific Railroad Co.,* 393 U.S. 129, 89 S.Ct. 323, 21 L.Ed.2d 289 (1968); *Southern Pacific Co. v. Arizona, supra* (Black, J., dissenting); *Raymond Motor Transp. Inc. v. Rice, supra* (Blackmun, J., concurring).[3]

Under either interpretation, our analysis of relevant United States Supreme Court cases indicates a regulatory scheme will be upheld against asserted burdens on interstate commerce if a compelling and legitimate state objective is involved, if the asserted state justification is not illusory or slight, and if the regulations do not discriminate in favor of local interests or conflict with actually existing state statutes. Safety regulations have generally been upheld under this analysis. See, *Raymond Motor*

---

**3.** The United States Supreme Court's opinion in *Raymond Motor Transp. Inc. v. Rice,* 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978), did not conclusively resolve this issue. The majority opinion written by Justice Powell and expressing the view of three other justices indicates that the asserted state interest has to be weighed against the degree of interference with interstate commerce. 434 U.S. 443, 98 S.Ct. 795, 54 L.Ed.2d 676. The concurring opinion written by Justice Blackmun and expressing the view of four justices indicates that the nature of the state interest involved is the crucial factor. If it is a state interest where deference is accorded to state control, a reviewing court should not balance the burdens on interstate commerce against the benefits of the state interest as long as the state interest is not illusory or problematical. 434 U.S. 449, 98 S.Ct. 798, 54 L.Ed.2d 680.

*Transp. Inc. v. Rice, supra; Bibb v. Navajo Freight Lines,* 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959); *Southern Pacific Co. v. Arizona, supra;* cf., *Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

█ The environmental interests in this case clearly involve compelling state interests reasonably analogous to safety regulations. Therefore, plaintiffs' Commerce Clause attack would be persuasive only if it were clear on the record that the state's interests in reviewing packages as an element of its solid waste management program are illusory. The trial court found solid waste generation to be a significant problem in Minnesota and packaging to be a major component in the solid waste stream, a finding supported by the record. However, plaintiffs argue the state's interests in this case are too speculative and too insubstantial, because only a small portion of the solid waste being generated will actually be covered by the package review process.

We are not persuaded by plaintiffs' argument. All that it required is that the regulatory scheme have more than an illusory impact. While there was no specific finding by the trial court of the percentage of total packaging which will be covered by the statute and the regulations or of the percentage of the total amount of solid waste which will be involved in the package review process, a reading of the MPCA's regulations demonstrates that despite the various exemptions, definite types of packaging will clearly be affected by the review process. Also, the record supports the trial court's finding that packaging is the largest and fastest growing component in generated solid waste, demonstrating that the state's interests in the statute and the regulations are not illusory. Furthermore, the amount of packaging covered by the regulations will increase as the effect of the grandfather clause in § 116F.06, subd. 2, passes. Finally, it is important to note that the package review procedure is an element of the total solid waste management program envisioned by Minn.St. c. 116F. The effect of the package review process would have to be far more limited before the state's interests in the statute and the regulations could be termed "illusory." [4]

█ Even if it were necessary to weigh the benefits provided by the statutory scheme against the burdens it imposes on interstate commerce, our decision would not be altered. It is difficult to quantify the benefits provided by a regulatory scheme designed to conserve resources, decrease pollution and litter, protect the environment, and thereby at least indirectly maintain the health of the public. Nevertheless, it is clear the benefits deserve great consideration and weight when analyzed under a Commerce Clause challenge, particularly because generation of solid waste is without dispute a critical and growing problem, and the scheme will have significant impact upon it. In addition, collection and disposal of solid waste represent a definite and ever-

---

4. This is illustrated by the decision in *Raymond Motor Transp. Inc. v. Rice, supra.* There, Wisconsin asserted highway safety as the sole justification for its regulations barring proposed operation of 65-foot double trailers on highways within Wisconsin. The only safety advantage it could suggest, however, was that it took longer to pass a 65-foot trailer than a 55-foot trailer. Plaintiff trucking companies produced uncontradicted evidence that the difference in passing times did not pose an appreciable threat to motorists and that, because of the many exemptions to the regulation, other vehicles over 65 feet long were allowed to use the state's highways. The United States Supreme Court held that the regulations violated the Commerce Clause.

The majority opinion by Justice Powell stressed that the holding was a narrow one and was based on the fact that Wisconsin failed to make even a colorable showing that its regulations contributed to highway safety. 434 U.S. 448, 98 S.Ct. 797, 54 L.Ed.2d 679. The asserted safety interests were found not to exist as a matter of law. Unlike the present case, the numerous exemptions in the *Raymond* case were only significant because the state of Wisconsin had made no showing that its regulations contributed in any appreciable manner to highway safety and because at least one of the exemptions discriminated, on its face, in favor of Wisconsin industries.

increasing financial burden to any community.[5]

The benefits outweigh the burdens asserted by plaintiffs. These burdens involve the potential of conflicting legislation in other states, the impairment of normal operations of interstate business, and the additional funds for research needed to develop information to be used in the package review process. None of the asserted burdens is entitled to significant weight in the present case. First, in environmental regulations, more than a potential for conflicting legislation must exist. *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 448, 80 S.Ct. 813, 819, 4 L.Ed.2d 852, 859 (1960). Second, in cases dealing with burdens on interstate commerce, the United States Supreme Court has been largely concerned with regulations which affect the transportation and flow of goods. The present regulations do not purport to deal·directly with the flow or transportation of entire packages in commerce; a potential disruption of the nationwide system of package distribution is unlikely. Third, cost of compliance alone has never been held sufficient to invalidate a state enactment under the Commerce Clause. For example, a combination of factors, including cost of compliance, caused the United States Supreme Court to invalidate the mudguard law in *Bibb v. Navajo Freight Lines, supra*, and in its opinion the court stated, "If we had here only a question whether the cost of adjusting an interstate operation to these new * * * regulations prescribed by Illinois unduly burdened interstate commerce, we would have to sustain the law * * *." 359 U.S. 526, 79 S.Ct. 966, 3 L.Ed.2d 1008.

■ We therefore hold that § 116F.06 and the regulations promulgated by the MPCA do not constitute an impermissible burden on interstate commerce and do not violate the Commerce Clause of the United States Constitution.

■ Plaintiffs' other constitutional attack involves the contention that § 116F.06 and the MPCA's regulations are so vague and imprecise that it is impossible for prudent persons to reasonably discern how to comply with the regulatory scheme and that the scheme, therefore, is unconstitutionally vague. Plaintiffs basically attack the method the MPCA will use in deciding whether a package is consistent with the aims of the statute.

Minn.Reg. SR–2 sets out the factors the MPCA will consider in reviewing a package. It establishes a review procedure that is fashioned after the environmental impact approach embodied within the Environmental Policy Act, Minn.St. 116D.04. In the review procedure, the MPCA staff compares the new package to packaging alternatives. Minn.Reg. SR–2(b). The staff is required to encourage alternatives which (1) minimize the potential for environmental contamination; (2) minimize the total amount of energy used; (3) minimize the use of scarce or non-renewable resources; (4) minimize the use of virgin materials; (5) minimize the use of nonrecyclable materials; and (6) minimize adverse economic effects on the consumer, the labor force, and industry. Minn.Reg. SR–2(b)(1) to (6). According to Minn.Reg. SR–2(c), "The decision to approve a new or revised package/container shall be based on a finding that the total positive impacts of the new or revised package/container outweigh the total negative impacts in comparison to the existing package/container and/or all feasible alternatives submitted pursuant to SR–5." Minn.Reg. SR–2(c) indicates ten criteria which will be viewed in assessing a package,[6] but there is no indication what weight

---

**5.** Evidence at trial indicated that in 1974 it cost $3.5 billion nationally to collect and dispose of 135 million tons of municipal solid waste. These costs, of course, have increased substantially since that time.

**6.** In assessing a new package, the MPCA determines whether the new package, when compared to the existing package and feasible alternatives:

(1) Contains greater or lesser quantities of metals, hydrocarbons, organic or inorganic chemicals, or other substances which upon release into the environment through incineration, leaching, or littering have potential for biological harm;

will be given to each criterion. It is possible that the relative weights could change for different types of packages. Plaintiffs argue that it is impossible, therefore, to predict how the MPCA will rule on a particular package and that package manufacturers are unable to determine how to design their packages to pass MPCA review.

While there is a significant amount of discretion in this kind of agency decision, and plaintiffs' concern with their ability to predict whether a particular package will be approved by the agency is understandable, we are not persuaded that the package review procedure should be overturned. We are impressed by the need for flexibility in the review process. Section 116F.06 and the MPCA's regulations constitute a unique regulatory scheme designed to help alleviate a problem which has only been recently recognized. In the future, knowledge and evaluation tools are likely to change. Different packages might present different kinds of problems, and it would be unwise to require that the same weight be attached to each factor each time a different type of package is reviewed. The criteria established and the decisionmaking provided in the package review process are broad, but the complexity and sophistication of the solid waste generation problem coupled with the other environmental objectives provided in Minn.St. c. 116F mandate the flexibility contained in the statute and the regulations. It is unlikely that the regulations could be significantly more precise in this kind of regulatory scheme.

Additionally, while plaintiffs may not be able to predict the importance the agency will assign to each of the criteria specified in Minn.Reg. SR–2(c) until the MPCA actually begins to review packages, plaintiffs, because of the criteria, will be aware of the general boundaries of the MPCA's consideration. The packaging industry will, for example, know that the MPCA is concerned with whether components of the package might have potential for biological harm, the kinds of resources used in the package, the potential for recycling of the package, the energy needed to produce the package, and the effect the package might have upon generation of solid waste. These are factors about which the packaging industry should have information or which should be part of any conscientious decision involving the material components of a package.

The impact of plaintiffs' vagueness argument is lessened also by the various safeguards in the statute. The MEQB can review the agency's decision to ban a package. Most important a ban on the sale of a package will not continue past the last legislative day of the next following legislative session unless the ban is extended by law. § 116F.06, subd. 2. The legislature has recognized the troubles which could arise in implementing this unique environmental regulation and has consequently provided numerous opportunities for review of an agency ban.

Finally, it is important to note the posture of plaintiffs' constitutional attack. Plaintiffs are broadly attacking the entire regulatory scheme, before any actual review of a package has taken place. A great deal of the alleged ambiguity in the scheme will likely be eliminated when the MPCA begins to conduct reviews. Similarly, while there is significant agency discretion in the package review process, the time for this court to consider an abuse of that discretion would be after the MPCA has actually reviewed a package. This court will better be able to see the problems which exist in the

(2) Has potential for creating an environmental problem as litter;

(3) Requires more or less Btu/kg (British thermal unit per kilogram) of product; .

(4) Requires more or less scarce or nonrenewable resources;

(5) Has a higher or lower virgin materials content;

(6) Has more or less current potential for recycling;

(7) Results in an increase or decrease in the volume of solid waste;

(8) Has a beneficial or adverse economic effect on the consumer;

(9) Has a beneficial or adverse economic effect on the labor force; and

(10) Has a beneficial or adverse economic effect on industry. Minn.Reg. SR–2(c).

package review process in a case where the review process has actually been completed. At that time, possible problems in the review process might be demonstrated more concretely than the broad, general attack plaintiffs have undertaken. While factors of ripeness do not cause us to foreclose consideration of plaintiffs' vagueness argument, such factors do make us wary of accepting a general assault on the entire package review scheme. We therefore hold that § 116F.06 and the MPCA's regulations are not impermissibly vague.

II. The Issues of Statutory Interpretation

Plaintiffs contend § 116F.06 does not give the MPCA power to promulgate "regulations" and thus the regulations do not have the force and effect of law. Defendants respond that the regulations should be considered to be legislative rules enacted pursuant to delegated powers to make substantive law, rules which thereby have the force and effect of law.

 There is no reference in § 116F.06 to MPCA authority to promulgate regulations. However, § 116F.06, subd. 3, does provide, in part: "The agency shall adopt and may amend or rescind *guidelines* identifying the types of new or revised containers and packaging that are subject to its review after notice and hearing as provided in section 15.0412, subdivision 4." (Italics supplied.) Section 15.0412, subd. 4, provides the procedure by which an agency must adopt a rule and provides in part for public hearing and notice of the hearing to interested persons.[7] After such notice and hearing, the MPCA promulgated the regulations here in issue.

We hold that the regulations do not have the force and effect of law. The absence of a specific provision in § 116F.06 authorizing the MPCA to promulgate regulations with the force and effect of law is, in our view, the critical factor in issue. The legislative history of § 116F.06 indicates the omission of authority to promulgate regulations with the force and effect of law was deliberate.

The Bill, as first introduced in the House of Representatives, House File 1821, would have authorized regulations:

"Pursuant to Minnesota Statutes, Chapter 15, the Agency may adopt, amend or rescind regulations and standards for the prevention, abatement, or control of solid waste generation; and such regulations and standards shall have the force and effect of law." Section 6.

On May 4, 1973, this section was amended to delete reference to "regulations" and to replace it with "guidelines":

"The agency shall prepare guidelines identifying the types of new or revised containers and packaging that are subject to its review." Journal of the House, 1973, p. 2598.

The Bill was passed as amended, without any material change in the language. The legislature's decision to permit the MPCA to adopt guidelines and its refusal to grant the MPCA authority to adopt regulations with the force and effect of law indicate the legislature intended to restrict the MPCA's legislative rulemaking power.

Authorization for the promulgation of regulations with the force and effect of law is, then, plainly absent from § 116F.06— and, as we recently stated in *State v. Lloyd A. Fry Roofing Co.*, 310 Minn. 528, 534, note 6, 246 N.W.2d 696, 700 (1976):

"* * * Courts cannot properly aid the agency by construing the statute to confer upon it implicit authority, when to do so would contravene the legislature's apparently deliberate failure to explicitly grant it such authority."

The MPCA's regulations, as required by § 116F.06, subd. 3, were promulgated after notice and hearing, as provided in § 15.0412, subd. 4, and except as hereafter indicated in this opinion, are valid, whether they be termed "regulations" or "guidelines." However, despite the name the MPCA uses to identify these guidelines, they do not have the force and effect of law.

---

7. Minn.St.1974, § 15.0412, subd. 4, was amended by L.1975, cc. 380 and 413, and was further amended by L.1977, c. 443, § 2. At the time of

promulgation of the regulations, Minn.St.1974, § 15.0412, subd. 4, was in effect.

The scope of the "grandfather clause" contained in § 116F.06, subd. 2, is a subject of sharp disagreement between plaintiffs and the MPCA. Section 116F.06, subd. 2, directs the MPCA to review new or revised packages (except when changes involve only color, size, shape, or printing) to determine if the package would constitute a solid waste disposal problem or be inconsistent with state environmental policies. This subdivision also outlines the steps in the reviewing process, which ultimately can result in prohibition of the sale of the package in the state. The last sentence of the subdivision provides, "This subdivision shall not apply to any package or container sold at retail in this state prior to final enactment of sections 116F.01 to 116F.08." Final enactment took place on May 24, 1973. Minn.Reg. SR–1(b)(3) of the MPCA's regulations defines a "new or revised" package, subject to review, to include a package sold prior to May 25, 1973, which carries a product in a different five-digit Standard Industrial Classification code than it earlier carried.

The question posed is whether the MPCA has attempted to regulate packages which were intended by the legislature to be exempt under the grandfather clause. Plaintiffs argue the grandfather clause by its language unequivocally exempts any package sold at retail in Minnesota before May 25, 1973, and since there is no language or legislative history indicating the legislature intended to restrict the exemption by reference to the contents of a package, the MPCA cannot include the package in its regulations, even if a different product is put into the package. Defendants argue the propriety of their construction of the grandfather clause is a fact question, and the fact question is whether a package having its contents changed is a "revised" package. Defendants cite evidence indicating a package and the product it contains are inextricably related and argue that such a finding of fact by the trial court cannot be set aside unless it is "clearly erroneous."

■ The question of what the legislature intended to exempt via the grandfather clause is one of statutory interpretation and, as such, is not one of fact. Cf., *No Power Line v. Minnesota Environ. Quality Council,* 262 N.W.2d 312, 320 (Minn.1977). Because this is not a fact question, the "clearly erroneous" standard of review is inapplicable.

■ The language of the grandfather clause is unambiguous. It states that the subdivision does not apply to *any* package sold at retail prior to the final enactment of the statute. Defendants produce no evidence that the legislature intended by these words to exclude from the grandfather clause's protection packages sold at retail prior to final enactment of the statute but which, after final enactment, contained different products. Defendants' arguments would justify regulations defining a "new or revised" package to include a package previously approved by the MPCA but presently containing a different product as long as the original package was not sold at retail in Minnesota before May 25, 1973, but such arguments are not relevant in deciding legislative intent as expressed in a clear and unambiguous provision of a statute.

Speaking of the grandfather clause in the Minnesota Power Plant Siting Act, we noted in *No Power Line v. Minnesota Environ. Quality Council,* 262 N.W.2d 312, 320, "All cases construing grandfather clauses share one thought in common—namely, that it is unfair to penalize the regulated party for something begun prior to the enactment of the statute." In the Package Review Act, the legislature seemingly intended to exempt from the statute *any* package sold at retail before passage of the statute in order not to overly burden companies which had packages already being used in the state and which had planned and developed the packages before the conditions imposed by the statute became known. The language of the statute indicates the legislature intended to exclude from MPCA review any package sold at retail prior to May 25, 1973. To the extent the MPCA's regulations purport to include such packages, they are contrary to the language and intent of

§ 116F.06, subd. 2, and are therefore invalid.[8]

■■ Plaintiffs contend the regulations do not give sufficient notice to a package manufacturer of the MPCA's intention to review a package. The regulatory scheme set up by the regulations contains four stages of package review. At the first stage, the MPCA reviews the package and determines if it constitutes a solid waste disposal problem or is inconsistent with state environmental policies. At the second stage, the MPCA, after notice and hearing as provided by Minn.St. c. 15, can by order prohibit sale of the package in this state. At the third stage, the MEQB may review the proposed prohibition. Finally, the prohibition will continue only if the legislature enacts the prohibition into law by the end of the next legislative session.

The problem with the first stage of review is that, under the regulations; it is possible a manufacturer of a package will not receive the MPCA's notice of intention to review the package. See, Minn.Reg. SR–3(c). This is because such notice is sent to the package "user," and the package "user" is defined in the regulations as the "industry which combines packages/containers and products to create a unit intended for sale at retail." Minn.Reg. 1(b)(8). The definition does not include plaintiffs who manufacture packages and sell the empty packages to packers, even though they would be affected if their package were banned from sale in the state. We think it is clear from the language of § 116F.06, subd. 2, that the legislature intended that a package manufacturer be an active participant during the entire package review process, thus requiring a statutory construction that a package manufacturer be notified of the MPCA's intention to review the manufacturer's package.

Affirmed in part; reversed in part.

OTIS, J., took no part in the consideration or decision of this case.

---

**8.** Defendants argue that such an interpretation of the grandfather clause contained in § 116F.06, subd. 2, will substantially impair the statute's effectiveness. If that is indeed the result, it is of course subject to legislative revision.