*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0255**

Lenny N. Anderson,
Appellant,

vs.

City of St. Paul,
Respondent.

**Filed December 19, 2016
Affirmed
Ross, Judge**

Ramsey County District Court
File No. 62-CV-14-3231

Frederic W. Knaak, Holstad & Knaak, PLC, St. Paul, Minnesota (for appellant)

Samuel J. Clark, St. Paul City Attorney, Cheri M. Sisk, Assistant City Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Hooten, Judge; and Smith, John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

Lenny Anderson and the City of St. Paul have long feuded over Anderson's storing of vehicles, equipment, and industrial mishmash on his property. The city declared a nuisance and removed the offending items, and Anderson sued unsuccessfully, alleging that the city unconstitutionally destroyed and tortiously converted his personal property. The city sought to recover its abatement costs by special assessment, and Anderson appealed the assessment to the district court mostly by reasserting the failed claims from his lawsuit. The district court dismissed those claims and, after a bench trial, rejected the remaining count—fraud or mistake. Because Anderson's constitutional claims were previously fully litigated and the city charter does not prohibit the city from destroying personal property that it removes during a nuisance abatement, we affirm the district court's decision affirming the city's assessment.

## FACTS

In early November 2011, the City of St. Paul ordered Lenny Anderson to end nuisance conditions on his property. Anderson appealed administratively, and the city council denied his appeal. It set a deadline for Anderson to abate the nuisance himself. Anderson did nothing.

The city hired K.A. Kamish Excavation and instructed it to remove and dispose of the following items:

> [T]railers with contents, truck cargo containers, boats, broken riding lawn mowers, tires, wood, metal, car batteries, [S]tyrofoam, junk, freezer, commercial equipment,

> commercial storage units, building materials, buckets, barrels, junk, etc. throughout the property, and from decks and roof . . . [and] storage from beds of pickup trucks parked near the west side of the house.

Kamish performed the abatement in December 2011 under the direction of Steven Magner, the city's Manager of Code Enforcement.

Kamish provided an itemized invoice identifying the services performed and their costs along with a credit for scrap iron collected. Magner testified that the contractor is entitled to all salvage for demolition activities under the city's general contract. He explained that, although the abatement was not demolition under the general contract, he directed Kamish to deduct the value of the scrap metal salvaged. Kamish's invoice totaled about $10,000.

Anderson sued the city in January 2012, alleging trespass, conversion, and multiple violations of the state and federal constitutions. He claimed that the city violated his due process rights by failing to notify him of the abatement deadline. The district court dismissed the suit at summary judgment.

Anderson appealed, arguing that the city failed to give him proper notice under sections 45.10 and 45.11 of the St. Paul Legislative Code. *See Anderson, et al. v. City of St. Paul, et al.*, No. A12-2132, at 3 (Minn. App. Nov. 14, 2013) (order op.), *review denied* (Minn. Jan. 29, 2014). We did not address his section-45.11 theory because he did not raise it in the district court. *Id.* We did address his section-45.10 theory, but we rejected it, holding that the city did not violate his due process rights. *Id.* at 4–5.

The city council specially assessed Anderson's property $10,050.48 to cover Kamish's invoice and an administrative fee. Anderson appealed to the state district court, challenging the abatement, the invoice, and the assessment. He also filed a lawsuit in federal district court claiming damages for both the 2011 abatement and a 2010 abatement. *Anderson, et al. v. City of St. Paul, et al.*, No. 15-CV-1636 (PJS/HB), 2016 WL 614384 (D. Minn. Feb. 16, 2016) (slip op.), *pet. for review filed* (8th Cir. Mar. 16, 2016). The city moved to dismiss the appeal in state court as barred by res judicata. The district court agreed and dismissed all but one of Anderson's claims (alleged fraud or mistake in the amount of the assessment), and set the case for a bench trial. The federal district court dismissed Anderson's federal claims. *Id.* at 3–5. Anderson has appealed that decision to the Eighth Circuit, where the matter is pending.

Anderson testified at the bench trial in state district court and called Carol Berg and Timothy Lind as witnesses. Anderson, Berg, and Lind listed the personal property removed during the abatement, and Anderson and Berg opined about its value. Anderson argued chiefly that the scrap-metal value should have been higher, that the city may only remove but not destroy personal property, and that the assessment must offset the value of all the removed personal property, not just the value of scrap metal.

Magner testified that he had approved all of Kamish's work and that its final invoice was accurate. He opined that the city code authorized the city to abate nuisance property in any manner it sees fit and that it does not require the city to inventory or offset the value of abated property.

The district court affirmed the assessment. Anderson appeals.

4

**D E C I S I O N**

Anderson argues that the city cannot specially assess the abatement costs because it violated his due process rights by failing to adequately notify him of his abatement deadline. He also maintains that the district court erred by affirming the full special assessment amount. Neither argument leads us to reverse.

**I**

Anderson argues that the city violated his due process rights by failing to adequately notify him of his abatement deadline, preventing the city from specially assessing his property to cover the abatement costs. The district court dismissed this issue as barred by res judicata. We review the district court's application of res judicata de novo. *Rucker v. Schmidt*, 794 N.W.2d 114, 117 (Minn. 2011). Res judicata establishes an absolute bar to a claim when: (1) a prior claim involved the same factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the claim. *Id.*

Anderson raised the same ineffective-notice challenge in his 2012 lawsuit against the city over the same abatement he now contests. We affirmed the district court's summary-judgment decision against Anderson in part because we saw no due process violation. *See Anderson*, No. A12-2132, at 3–5. The claim meets all the elements of res judicata and Anderson cannot re-litigate it here.

Anderson argues that res judicata does not bar his claims. He first references *Anderson v. City of St. Paul*, Nos. A09-1269, A09-1288, 2010 WL 1850648, at *1 (Minn. App. May 11, 2010), *review denied* (Minn. July 20, 2010), in which we consolidated

5

Anderson's appeal from the district court's judgment with his certiorari appeal. In that case we reasoned that, "[u]nless otherwise provided by statute or appellate rule," a party requesting review of a quasi-judicial decision must file a writ of certiorari. *Id.* at *2 (citing *Neitzel v. County of Redwood*, 521 N.W.2d 73, 76 (Minn. App. 1994), *review denied* (Minn. Oct. 27, 1994)). We determined that the city council's decision to issue the abatement order was a quasi-judicial act, and in the absence of other authority, his only method of obtaining review was through certiorari appeal; we therefore affirmed the district court's dismissal of his claims for lack of subject matter jurisdiction. *Id.*

Anderson's argument is not clearly presented. Construed most favorably, he now apparently asserts a similar jurisdictional defect in his 2012 challenge to the abatement by arguing, "[T]he unpublished opinion in A12-2132 and the district court opinion in that case . . . is not binding as the lack of subject matter jurisdiction existed in that case as well." He maintains that the district court's order partially dismissing his appeal in *this* case "also needs to be reexamined with the understanding that it is the lack of subject matter jurisdiction, and not [res judicata] and collateral estoppel, that limited [Anderson's] right to bring up issues in this case." He fails to explain the supposed jurisdictional defects in his 2012 case or in this case. We ordinarily decline to reach an issue in the absence of adequate briefing. *State, Dep't of Labor and Industry v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997). And Anderson's assertion invites us to speculate as to the alleged jurisdictional defects in the 2012 case and their impact on the district court's application of res judicata here. We decline to do so. Because Anderson has failed to present anything more than a vague assertion of a jurisdictional defect, we are left to

6

determine the propriety of the district court's grant of summary judgment in the context of the established procedural history.

At oral argument, Anderson argued that imposing the special assessment constitutes a new, subsequent injury that is not subject to res judicata. A party generally cannot raise new theories on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). This is a new theory that Anderson did not raise in the district court. We will not consider it.

**II**

Anderson contests the city's special assessment levied against him for the costs of the nuisance abatement. Charter cities may enact and enforce their own ordinances on special assessment collection procedures. *See* Minn. Stat. §§ 429.101, 429.111, 463.26 (2014). St. Paul prohibits nuisances and has established a procedure to declare and abate nuisances and to collect by special assessment the fees and costs of abatement. *See* St. Paul, Minn., Legis. Code ch. 45 (2016). And the city has established by charter and code the procedure for collecting assessments. *See* St. Paul, Minn., City Charter § 14.01.6 (2016); St. Paul, Minn., Admin. Code § 60.03 (2016).

Anderson argues that the district court should not have affirmed the special assessment amount. St. Paul's charter allows aggrieved parties to appeal special assessments to the district court. St. Paul, Minn., City Charter § 14.01.4(1) (2016). Special assessment appeals are wholly statutory, and the conditions imposed by the statute must be strictly complied with. *Wessen v. Village of Deephaven*, 284 Minn. 296, 298, 170 N.W.2d 126, 128 (1969); *see also* Minn. Stat. § 429.081 (2014); St. Paul, Minn., City Charter § 14.01.4(1)–(4) (2016).

7

Whether the district court properly limited the issues in deciding Anderson's appeal from the assessment therefore depends on the city charter. The relevant condition imposed by the city's charter is this: "The only defense to an assessment shall be that the assessment is fraudulent, or that it is made upon a demonstrable mistake of fact or law." St. Paul, Minn., City Charter § 14.01.4(2). After the district court rejected Anderson's previously asserted claims, it therefore appropriately limited the bench trial to whether the city's assessment was fraudulent or resulted from mistake.

Anderson offers two arguments to support his mistake-of-law defense to the special assessment. The arguments are not convincing.

Anderson first argues that no city ordinance authorizes the city to destroy personal property during abatement. He is incorrect because the city's legislative code implicitly leaves the method of abatement to the city's discretion. The code declares broadly that "[a]batement may include, but shall not be limited to" an express list of abatement methods. St. Paul, Minn., Legis. Code § 45.08(b) (2016). That the code does not expressly identify destruction therefore does not advance Anderson's position. The code nowhere precludes the destruction or disposal of nuisance property.

Anderson next argues that the city must account for and offset the value of all abated property, not just the scrap metal. The argument is unavailing. Framed purely as a policy question, on one hand, it might make good sense for a city to impound all items it collects during its abatement of a nuisance so that an offending property owner might later reclaim any items he values. But on the other hand, one might consider it to be bad policy to encumber city workers and contractors with the duty to sort, identify, and store objects the

8

city has already deemed to be junk, or to value and presumably resell (or charge taxpayers for) every item not eventually reclaimed by the owner. Either way, we need not rely on any policy considerations; we decide only as a matter of law whether the city is bound to repay Anderson the supposed value of all the stuff carted away from his lot. And for the following reasons, we conclude that it is not.

St. Paul has enacted and enforced its own ordinances on special assessment collection and abatement procedures as a charter city authorized by state statute. Neither its city charter, legislative code, nor administrative code requires the city to account for or to offset the abatement costs by the value of abated property.

Anderson does not identify any statutory bases for the city's supposed requirement to repay him the cost of the miscellaneous abated things. He instead invites this court to establish the requirement on its own, asserting, "There is no impediment to this Court ruling that the costs of the abatement must be offset by the value of the property seized." For this he relies only on *State by Spannaus v. Lloyd A. Fry Roofing Co.*, 310 Minn. 528, 246 N.W.2d 696 (1976), and he argues that he may collaterally attack an administrative agency order in an enforcement proceeding. Even if we were inclined to impose a requirement not imposed by the city or state legislatures (and we are not), Anderson overlooks the fact that the *Spannaus* court allowed a collateral attack because the applicable governing statute "[did] not provide that the exclusive means of review shall be direct appeal." *Id.* at 530, 246 N.W.2d at 698. By contrast, the controlling law here establishes that a party is entitled only to a limited appeal of a special assessment in the district court. This statutory restriction controls our review.

9

And Anderson has not established any of the allowable defenses under those provisions. He gives us no reason to question the district court's finding that neither fraud nor mistake infect the challenged special assessment. The record confirms that Kamish's invoice charged for the services that Kamish provided at the city's request and direction. It also indicates that the city followed its ordinances in abating the nuisance property by removing and destroying what appeared to be junk, and the city was not statutorily obligated to inventory or repay Anderson the value of those items.

**Affirmed.**