ARROWHEAD CONCRETE WORKS, INC., Petitioner, Appellant,

v.

Charles W. WILLIAMS, Commissioner, Minnesota Pollution Control Agency, Respondent.

No. C7–95–2316.

Court of Appeals of Minnesota.

July 16, 1996.

Keith S. Moheban, Leonard, Street & Deinard, P.A., Minneapolis, for Appellant.

Hubert H. Humphrey, III, Atty. Gen., Ann E. Cohen, Asst. Atty. Gen., St. Paul, for Respondent.

Considered and decided by DAVIES, P.J., and HARTEN and WILLIS, JJ.

## OPINION

WILLIS, Judge.

Arrowhead Concrete Works, Inc., appeals from an adverse grant of summary judgment to the Commissioner of the Minnesota Pollution Control Agency (MPCA), arguing that (1) the district court applied an incorrect

standard of review, (2) the district court affirmed the administrative penalty order on a basis different from that relied on by the Commissioner in issuing the penalty order, and (3) material facts were at issue. Arrowhead also claims that the district court erred by denying its motion for summary judgment and requests "costs of suit and reasonable attorney fees."

## FACTS

Arrowhead is located in Hermantown and manufactures concrete and concrete blocks for distribution throughout northeastern Minnesota. In May 1994, the MPCA received a citizen complaint regarding a pile of debris on Arrowhead's property. MPCA inspector Darren Saari visited the property on May 31, 1994, and noted that the 150–200 cubic-yard pile consisted of pallets and vegetation, as well as metal, foam, carpet, insulation, and other demolition debris. Saari had no contact with any Arrowhead officials at this initial inspection.

A week later, Saari contacted a Hermantown city official to arrange a meeting on June 13, 1994, between Arrowhead and the MPCA.

On June 8, 1994, at approximately 9:15 p.m., the pile of debris started burning. The Hermantown fire chief stated that while the pile burned, Jim Carlson, one of Arrowhead's co-owners,

> told [him] that the pile consisted entirely of waste pallets, that [Carlson] had intended to obtain a burning permit to burn the waste pallets, and that [Carlson] did not want the fire extinguished because it would be difficult to start on fire again if it was extinguished.

Carlson, however, claimed that he told the fire chief "to put the fire out" if necessary but, from his perspective, extinguishing the fire was "irrelevant" because "there's nothing of value there." [1] Believing that the pile of debris contained nothing hazardous, the fire chief soaked the perimeter of the pile with water to prevent the fire from spreading and let it burn.

The pile smoldered for two days before the MPCA learned of the fire. After Saari inspected the smoldering ash pile, he immediately asked the Department of Natural Resources to extinguish the remnants of the fire.

An MPCA enforcement forum was convened, and MPCA staff person Tom Sinn recommended a nonforgivable administrative penalty of $5,300, consisting of a base penalty of $3,500 and $1,800 to reflect the economic benefit enjoyed by Arrowhead for not having to dispose of the waste. Sinn recommended making the penalty nonforgivable because "the deviation from compliance [was] serious in that the [solid waste] pile was set on fire instead of the waste being disposed of properly." The enforcement forum adopted Sinn's recommendation.

The MPCA issued a notice of violation letter on July 22, 1994, citing Arrowhead for failure "to obtain a permit to dispose of solid waste or to operate a solid waste management facility" in violation of Minn. R. 7001.3050, subp. 1 and Minn. R. 7001.0030. [2]

Arrowhead responded immediately and denied placing anything in the pile other than pallets and vegetation, starting the fire, or acquiescing in letting the fire burn.

The enforcement forum reconvened and decided that the penalty order should be based on "improper disposal of solid waste and the storage of waste without a solid waste management facility permit" with emphasis on "site/operator not having a permit and improper disposal of solid waste (burning)." The penalty recommendation remained nonforgivable and in the amount of $5,300.

No MPCA documents directly blame Arrowhead for starting the fire. In fact, an internal MPCA memorandum states that the issue of who set the fire is

> not important * * *. What is important is the fact that Arrowhead did not have a

---

1. Carlson maintained that he was unaware that the pile consisted of anything more than clean pallets and vegetation.

2. The notice-of-violation letter also cited Arrowhead for "open burning." The official administrative penalty order, however, did not include this violation.

permit to store waste and they did not dispose of the waste properly at a solid waste disposal facility.

The Commissioner reviewed the penalty calculation worksheet, a draft penalty order, the July 22 letter, Arrowhead's response, and administrative documents and issued an administrative penalty order (APO) stating that Arrowhead violated Minn.Stat. § 116.081, subd. 1, and Minn. R. 7001.3050, 7001.0030 by not obtaining a permit. The APO summarized Arrowhead's violations as failing to "have a permit to store, process or dispose of solid waste or to operate a solid waste management facility." The Commissioner's APO imposed a nonforgivable $5,300 penalty.

Arrowhead petitioned for judicial review of the APO pursuant to Minn.Stat. § 116.072, subd. 7 (1994), and both parties subsequently moved for summary judgment. The district court granted summary judgment to the Commissioner, concluding that Arrowhead "allowed a large accumulation of solid waste upon its property without an appropriate permit" and therefore was subject to an administrative civil penalty. The district court determined that the penalty imposed was "not the result of any arbitrary or capricious action by the Commissioner." This appeal followed.

### ISSUES

1. Did the district court apply the correct standard of review?

2. Does the evidence support the district court's determination that Arrowhead violated the environmental protection statute by illegally storing solid waste without a permit, and, if so, was the nonforgivable penalty justified?

3. Does the record support the Commissioner's charge that Arrowhead illegally disposed of the debris?

### ANALYSIS

Summary judgment is proper if the district court determines that, on the basis of the documents and affidavits before it, there is no genuine dispute as to material facts and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal, this court must determine "(1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law." *City of Virginia v. Northland Office Properties,* 465 N.W.2d 424, 427 (Minn.App.1991), *review denied* (Minn. Apr. 18, 1991).

Minnesota's environmental protection statutes vest the Commissioner with authority to issue APOs for violations of hazardous and solid waste laws. *See* Minn.Stat. § 116.072, subds. 1–2 (Supp.1995). The Commissioner must forgive the penalty if the violation is corrected, or, if a party has committed a repeated or serious violation, the Commissioner may "issue an order with a penalty that will not be forgiven after the corrective action is taken." *Id.,* subd. 5 (Supp.1995).

While the statute does not define a "serious" violation, an internal agency document, the "Penalty Calculation Worksheet," instructs enforcers to rank the violation's "potential for harm" and the violation's "deviation from compliance" as minor, moderate, or serious. "Potential for harm" means the *risk* of actual harm, not whether actual harm occurred. The "deviation from compliance" factor involves

> the extent of the violation. * * * [A]s the number of violations increases, the deviation from compliance becomes greater; however, a single violation, because of its nature or effect, may in itself be a serious deviation.

A violation rates as "serious" if the enforcer ranks the "potential for harm" factor or the "deviation from compliance" factor as "serious."

### I.

■ **District court's standard of review:** Arrowhead claims that the district court incorrectly applied an "arbitrary and capricious" standard of review and "granted extraordinary deference to the commissioner." A person who petitions the district court for review of an APO is entitled to a trial de novo. Minn.Stat. § 116.072, subd. 7(b) (Supp.1995); *Kasal v. Minnesota Pollution Control Agency,* No. C1–93–2016, 1994 WL 175011 at *1 (Minn.App. May 10, 1994). The record indicates that Arrowhead's counsel

apprised the district court that a de novo standard of review applied and referred the court to the *Kasal* case both at oral argument and in the memorandum in support of its motion for summary judgment.

From this record, however, we can conclude only that the district court applied an "arbitrary and capricious" standard of review. The court's two-sentence memorandum states that the penalty imposed was "not the result of any arbitrary or capricious action by the Commissioner." Given this language, it does not appear that the district court conducted a de novo review of the Commissioner's decision.

## II.

Arrowhead contends also that the district court erred by affirming the APO on a ground different from that relied on by the Commissioner. Specifically, Arrowhead asserts that because the APO was based on an illegal disposal by burning violation, the district court, could not "affirm" the APO on the basis that Arrowhead had violated the statute by illegally storing solid waste without a permit. We agree, but apply a slightly different analysis.

■ First, we reject the Commissioner's argument that because the APO disjunctively listed violations of storing, processing, or disposing of solid wastes without a permit, proof of any of these actions was proof of a violation. This method of "charging" did not give Arrowhead proper notice of a specific alleged violation.

Second, we consider that an APO consists of two parts that are necessarily related: the violation and the penalty. On review, the district court must determine what violation, if any, occurred and whether the penalty "immediately assessed * * * is justified by the violation * * * ." Minn.Stat. § 116.072, subd. 7.

■ The record reasonably supports the district court's conclusion that Arrowhead illegally stored solid waste. In fact, Arrowhead conceded this point at the motion hearing. There is no doubt, however, that the

penalty "immediately assessed" resulted from an alleged *disposal* violation. Because the violation determined by the district court is *not* the violation on which the record shows the penalty was "immediately assessed," summary judgment for the Commissioner was improper.

■ Moreover, on the basis of the MPCA's own documents and the testimony of MPCA inspector Saari, the record does not support the conclusion that the storage violation merits a $5,300 nonforgivable penalty. The Commissioner may make a penalty nonforgivable only in the case of a repeated or serious violation. Minn.Stat. § 116.072, subd. 5(b); *cf.* Minn.Stat. § 116.072, subd. 5(a) ("Except as provided in paragraph (b), if the commissioner or county board determines that the violation has been corrected or appropriate steps have been taken to correct the action, *the penalty must be forgiven.*"[3] (Emphasis added)).

The penalty calculation worksheet shows that a nonforgivable penalty was recommended "because the deviation from compliance [was] serious in that the [solid waste] pile was set on fire instead of the waste being disposed of properly." The enforcement forum's own documents substantiate that the basis for a *nonforgivable* penalty was the fact that the pile of debris was set on fire.

Saari testified in his deposition that storage of the waste, by itself, was not "serious." Furthermore, the MPCA's initial reaction underscores the fact that the agency did not consider any suspected violation serious enough to warrant immediate action. Saari claimed that he noticed demolition debris in the pile at his initial inspection on May 31, 1994. He waited until June 7, however, to contact a city official to arrange a meeting with Arrowhead. The meeting was scheduled for an additional week later. The MPCA's decision to allow the debris pile to sit for almost two weeks before discussing it with Arrowhead belies any characterization of the storage violation as "serious."

The record shows, through agency documents and sworn testimony, that the MPCA did not consider the storage violation serious.

3. Paragraph (b) pertains to repeated or serious   violations.

The storage violation does not, therefore, support the district court's affirmance of the nonforgivable penalty.

### III.

■ Minnesota's waste management statute defines "disposal" as

the discharge, deposit, injection, dumping, spilling, leaking, or placing of any waste into or on any land or water so that the waste or any constituent thereof may enter the environment or be emitted into the air, or discharged into any waters, including ground waters.

Minn.Stat. § 115A.03, subd. 9 (1994). From this definition, the Commissioner extrapolates a claim that Arrowhead "disposed" of the waste by allowing the debris to sit on the ground in an uncontrolled manner. We reject this argument not only because it oversimplifies the facts, but also because it essentially collapses the alleged storage and disposal violations into one, and thereby would allow the agency to assess a disposal penalty by only having to prove a storage violation. Moreover, the agency's own documents do not support the theory that disposal of the waste occurred because Arrowhead "placed" the waste on the ground. Disposal occurred because the "pile was set on fire."

■ There is no evidence in the record to support the Commissioner's claim that Arrowhead "disposed" of the waste by burning it intentionally, and we reject that argument.

■ Likewise, the Commissioner's theory that Arrowhead is liable for a disposal violation by "letting the fire burn" cannot be a basis for upholding the district court's grant of summary judgment. First, the district court did not consider whether "letting the fire burn" was a violation of the solid waste statute. Second, there are material facts at issue regarding conversations between the fire chief and Arrowhead's owners about whose decision it was to let the fire burn. The record also is unresolved as to whether Arrowhead knew that the pile contained demolition debris. Summary judgment was not proper because material facts remained at issue and because the Commissioner has not shown that Arrowhead illegally disposed of the waste.

Given our decision, we need not review whether the district court erred by denying Arrowhead's motion for summary judgment. We also deny Arrowhead's request for attorney fees, having been provided with no statutory basis for such an award.

### DECISION

The district court erred in applying a deferential standard to its review of the Commissioner's decision. The record supports the determination that Arrowhead illegally stored solid waste, but not the imposition of a nonforgivable penalty for that violation. There are genuine issues of material fact precluding summary judgment on the Commissioner's claim that Arrowhead's response to the fire constitutes improper disposal of solid waste without a permit. The matter is remanded to the district court for de novo review of the evidence supporting that part of the APO. If the MPCA establishes that Arrowhead improperly disposed of solid waste, the district court must determine whether that violation warrants the penalty assessed by the Commissioner.

**Reversed and remanded.**