**In the Matter of the FINANCIAL RE-SPONSIBILITY OF FOSTER CARE SERVICES PROVIDED TO T.W.**

No. C9–00–1815.

Court of Appeals of Minnesota.

May 29, 2001.

James R. Olson, Brown County Attorney, James T. Clark, Assistant Brown County Attorney, New Ulm, MN, (for appellant).

Raymond F. Schmitz, Olmsted County Attorney, Geoffrey A. Hjerleid, Assistant Olmsted County Attorney, Rochester, MN, (for respondent).

Considered and decided by
SHUMAKER, Presiding Judge,
HARTEN, Judge, and PORITSKY, Judge.

## OPINION

BERTRAND PORITSKY,* Judge

Appellant Brown County and respondent Olmsted County dispute which of them is responsible for the cost of social services provided to a child who was adjudicated in need of protection or services (CHIPS) by the Brown County District Court but was later moved to live with extended family in Olmsted County, where he continued to receive services. The Department of Human Services (DHS) determined that Olmsted County was responsible for the cost of the services. On review, the Olmsted County district court reversed and ruled that Brown County is responsible for the cost of the services. Brown County appeals. We affirm.

## FACTS

In February 1998, on a petition filed by Brown County Family Services, the Brown County District Court adjudicated T.W. and his two siblings CHIPS. A March order transferred custody of the children to Brown County for foster placement until mother could care for the children. Later, T.W.'s siblings, but not T.W., were returned to the mother. T.W. went through several foster-care placements and treatment programs in unsuccessful attempts to curb his violent behavior.

In July 1999, T.W.'s case manager sent the Brown County Attorney a letter stating that returning T.W. to his mother was not possible and that the court should address transfer of T.W.'s physical and legal custody to his aunt and uncle in Olmsted County. The county attorney filed a motion for permanent placement allegedly seeking "permanent foster care" for the child. A hearing was set for September.

During September, the child started living with his aunt and uncle, and Olmsted County started providing services for the child. When Olmsted County later billed Brown County for the services, the counties disputed responsibility for the cost of the services.

After the September hearing, the Brown County District Court issued an October order stating that T.W. could not be returned to his mother and awarding permanent legal and physical custody of the child to his aunt and uncle. The order also indicated that any interested party could seek review of the placement. Because the child's violent behavior continued and

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the counties' billing dispute remained unresolved, a December 20 hearing was held, addressing both issues. On December 21, 1999, the Brown County District Court issued an order and memorandum that (a) stated that the October order placed "permanent physical custody" with "permanent foster parents" who reside in Olmsted County; (b) referred to T.W.'s aunt and uncle as T.W.'s "permanent foster parents"; (c) stated Olmsted County was to assume responsibility for the cost of the services for T.W.; (d) stated that if Olmsted County continued to refuse to pay for T.W.'s services, Brown County should make the payments and the responsibility for payment would be decided later; and (e) discharged the Brown County guardian ad litem and all counsel appointed in Brown County.

■ The Brown County Attorney then sent the Brown County District Court a letter indicating that the order's references to the child being in foster care meant Brown County could be liable for the cost of the services provided to the child. The Brown County District Court then issued an amended order on December 23 deleting the references to the child being in foster care with his aunt and uncle. The amended order states the child's permanent legal and physical custody had been transferred to the aunt and uncle.[1]

Olmsted County then asked DHS to determine which county was responsible for the costs associated with the child, and DHS ruled Olmsted County was responsible. On review, the Olmsted County District Court reversed and ruled Brown County was the financially responsible county. Brown County appeals.

## ISSUE

Did the district court correctly rule that Brown County was to be responsible for the cost of the services provided to the child?

## ANALYSIS

■ Chapter 256G is the "Minnesota Unitary Residence and Financial Responsibility Act." Minn.Stat. § 256G.01, subd. 2 (2000). It governs determinations regarding residence and financial responsibility for social services. *In re Bratsch,* 587 N.W.2d 656, 658 (Minn.App.1999). Interpreting the act is a question of law, which this court reviews de novo. *Id.*

Under the act, identifying the county financially responsible for social services depends on the circumstances of the case. *See* Minn.Stat. § 256G.02, subd. 4(b)-(f) (2000) (containing five definitions of "[c]ounty of financial responsibility" for different situations). One definition of "county of financial responsibility" indicates that,

> [f]or an individual already having a social service case open in one county, financial responsibility for any additional social services attaches to the case that has the earliest date of application and has been open without interruption.

Minn.Stat. § 256G.02, subd. 4(e) (2000). Olmsted County argues that this definition makes Brown County the county of financial responsibility in this case.

■ T.W. was adjudicated CHIPS in February 1998 and started receiving ser-

---

1. A copy of the letter is in the appendix to Olmsted County's brief, and a copy of the amended order is in the appendix to Brown County's brief. Neither document, however, is in the district court file. The letter and amended order are critical to this court's identification of the issues presented on appeal. Therefore, we take judicial notice of them. *Rigwald v. Rigwald,* 423 N.W.2d 701, 704 n. 5 (Minn.App.1988).

vices from Brown County no later than March 1998 when his custody was transferred from his mother to Brown County for foster placement. Foster care services are "social services" within the meaning of the act. *See* Minn.Stat. § 256G.01, subd. 3 (2000) (stating act applies to social service programs including "components of the Community Social Services Act, sections 256E.01 to 256E.12"); Minn.Stat. § 256E.03, subd. 2(a)(1) (2000) (defining "Community social services" to include services provided by counties to "families with children under age 18, who are experiencing child dependency, neglect or abuse").[2] Any social services case opened in Olmsted County for T.W. would not have been opened until after he was moved there in 1999. Additionally, because Brown County was continuously involved with T.W. before he was moved to Olmsted County, the Brown County social services case had been open "without interruption."

Brown County argues it is not the financially responsible county because Minn. Stat. § 256G.07, subd. 1 (2000) is controlling. With exceptions not invoked here, that provision states:

> [A] person who has applied for and is receiving services or assistance under a program governed by this chapter, in any county in this state, and who moves to another county in this state, is entitled to continue to receive that service from the county from which that person has moved until that person has resided in nonexcluded status for two full calendar months in the county to which that person has moved.

This provision does not mention financial responsibility; it says only that if a person moves to a new county, until that person has lived in the new county in "unexcluded status" for two months, the person is entitled both to continue receiving the same services received before the move, and to receive those services from the original county. Thus, once the person has been in a new county in "nonexcluded status" for two months, the new county becomes responsible for providing—as opposed to paying for—services. *Cf. id.*, subd. 2 (2000) (requiring county from which service recipient moved to conduct eligibility review and transfer service recipient's file to county to which service recipient moved and to do so before service recipient has spent two months in "nonexcluded status" in new county). But because section 256G.07, subdivision 1, upon which Brown County relies, does not address the financial responsibility for those services, the identity of the "county of financial responsibility" is determined by Minn.Stat. § 256G.02, subd. 4(e).

## DECISION

The district court properly concluded that a change in the identity of the county providing social services under Minn.Stat. § 256G.07, subd. 1 (2000), did not change the identity of the "county of financial responsibility" under Minn.Stat. § 256G.02, subd. 4(e) (2000).

**Affirmed.**

---

2. We note that none of the orders involved in this case specifically identifies the statutory authority under which services for the child were to be provided.