In the Matter of the FINANCIAL RE-
SPONSIBILITY FOR THE MENTAL
HEALTH SERVICES PROVIDED
TO D.F., a minor.

No. C5–02–1248.

Court of Appeals of Minnesota.

Feb. 18, 2003.

Kenneth R. White, Mankato, for appellant Human Services of Faribault and Martin Counties.

John M. Tollefson, Lac qui Parle County Attorney, Dawson, for respondent Lac qui Parle County Family Services.

Considered and decided by HARTEN, Judge, KALITOWSKI, Judge, and KLAPHAKE, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant Martin County challenges the district court's ruling that Martin County is financially responsible for mental health services provided by Lac qui Parle County to D.F., a minor, after D.F. moved to Lac qui Parle County.

## FACTS

On January 3, 2001, D.F.'s mother applied to Human Services of Faribault/Martin County (Martin) for mental health services on D.F.'s behalf. Voluntary, in-home services were provided for a number of months to help the child and mother cope with D.F.'s violent and inappropriate behaviors. On May 30, D.F.'s mother informed her in-home worker that she and the child were moving to Lac qui Parle County (Lac qui Parle). Because of the impending move, Martin terminated its services to D.F. and closed its case file on him. Sometime on or before June 7, D.F. moved to Lac qui Parle, and no further services were provided to him by Martin. Throughout the summer, D.F. lived with his mother in Lac qui Parle, but she neither applied for nor received services on his behalf.

On August 29, D.F.'s behavior deteriorated to such a degree that his mother applied to Lac qui Parle for services. Two days later, D.F. was admitted to inpatient psychiatric care. On September 13, Lac qui Parle submitted a written demand on Martin to assume financial responsibility for services provided to D.F., contending that D.F. had not yet established residency in Lac qui Parle.

The dispute was presented to the Minnesota Department of Human Services, where a referee determined that Martin had improperly terminated its services to D.F. and had not followed proper procedures for transferring responsibility to Lac qui Parle. The referee also determined that D.F. had not lived in Lac qui Parle for two full calendar months, leaving financial responsibility for his care with Martin.

On appeal to the Lac qui Parle District Court, Martin challenged the referee's authority to determine that it had improperly terminated services to D.F. and disagreed with Lac qui Parle's interpretation of the term "two calendar months." The district court affirmed the referee's determination that services to D.F. should not have been terminated and held that the termination was ineffective. The district court then ruled that Martin remained financially responsible for services to D.F.

## ISSUE

Did the district court correctly determine that Martin was financially responsible for services provided to D.F.?

## ANALYSIS

██ When reviewing an agency's determination of a question of law, a court is "not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). And when a district court has reviewed an agency determination, this court is not bound by the district court's decisions. *In re Signal Delivery Serv., Inc.*, 288 N.W.2d 707, 710 (Minn.1980).

Appellant Martin argues that the Department of Human Services referee and the district court incorrectly interpreted and applied Minnesota statutes to the facts of this case, leading them to find Martin financially responsible for services provided to D.F. after his move to Lac qui Parle. We agree.

This case turns on the application of various sections of the Unitary Residence and Financial Responsibility Act; Minn. Stat. §§ 256G.01, et seq. (2002). Specifically, the parties here dispute whether the issue is controlled by section 256G.02, subdivision 4(e), or by section 256G.07.

The district court found that appellant improperly terminated services to D.F. on May 31, 2001. Because the termination was improper, the court found it to be ineffective, so that D.F.'s case file in Martin essentially remained open even though no further services were provided to him. Having deemed the case to be technically open, the court found that financial responsibility was controlled by section 256G.02, subdivision 4(e), which states:

> For an individual already having a social service case open in one county, financial responsibility for any additional social services attaches to the case that has the earliest date of application and has been open without interruption.

Applying this section, the court determined that Martin should remain financially responsible for services provided to D.F. because that county had the case with the earliest date of application that had been open without interruption.

The district court also cited as authority for its holding *In re Financial Responsibility of Foster Care Services Provided to T.W.*, 627 N.W.2d 102 (Minn.App.2001). In *T.W.*, this court held that financial responsibility should be determined by applying section 256G.02, subdivision 4(e), rather than section 256G.07 because section 256G.07, subdivision 1, dictated which county should provide services, while section 256G.02 applied when determining financial responsibility for the services that are provided. *T.W.*, 627 N.W.2d at 105.

██ We reject the district court's reliance on *T.W.* The facts here are distinguishable because in *T.W.*, T.W. received services constantly before and after his move to a new county. Further, the new county assumed responsibility for providing services shortly after T.W.'s move. *Id.* at 103. Here, D.F. moved to Lac qui Parle no later than June 7, 2001. At the time of his move, Martin considered its file on D.F. to be closed and provided no further services to him. Moreover, D.F.'s mother did not apply for services for him in Lac qui Parle until August 29. Thus, even if the Martin file was not properly terminated in May, nearly three months passed before D.F. received any services in Lac qui Parle. Because of this difference in the timing of the provision of services, section 256G.02 no longer controls in determining which county is financially responsible for the services provided to D.F. as of August 31. Rather, we look to Minn. Stat. § 256G.07 (2002).

Minn.Stat. § 256G.07 is entitled "Moving to Another County." This section specifically deals with the transition of services from one county to another when the re-

cipient moves. Section 256G.07, subdivision 1, states:

> [A] person who has applied for and is receiving services or assistance * * *, in any county in this state, and who moves to another county in this state, is entitled to continue to receive that service from the county from which that person has moved until that person has resided in nonexcluded status for two full calendar months in the county to which that person has moved.[1]

Under this section, Martin would have remained responsible for providing services to D.F. until he had spent two months in Lac qui Parle. At that point, Martin would be entitled to cease providing services to D.F. and close its file on him.

Although the parties dispute whether D.F. moved to Lac qui Parle on May 31 or June 7, for purposes of this decision, either date leads to the same result. As noted above, Martin would have been responsible for services provided to D.F. until he had lived in Lac qui Parle for "two full calendar months." *Id.* Pursuant to Minn.Stat. § 645.14 (2002), the computation of a calendar month is determined as follows:

> When, in any law, the lapse of a number of months before or after a certain day is required, such number of months shall be computed by counting the months from such day, excluding the calendar month in which such day occurs, and including the day of the month in the last months so counted having the same numerical order as the day of the month from which the computation is made, unless there be not so many days in the last month so counted, in which case the

period computed shall expire with the last day of the month so counted.

While the wording of this statute is hardly a model of clarity, it has been interpreted by the supreme court as standing for the proposition that "months are generally understood to run from the given day in one month to the corresponding date in the specified preceding or succeeding month." *Hammer v. Investors Life Ins. Co. of North America*, 511 N.W.2d 6, 9 (Minn. 1994).

Under this interpretation, the "certain day" in this case is the date of D.F.'s move to Lac qui Parle, and counting from May 31, and not including May, two months would have passed on July 31. Counting from June 7, and not including June, two months would have passed on August 7. Thus, in either case, Martin was entitled to terminate services and close its file on D.F. no later than August 7. Because D.F. no longer had an open file after that point, Minn.Stat. § 256G.02, subd. 4(e), no longer applied to him. Rather, D.F. fell under Minn.Stat. § 256G.02, subd. 4(b) (2002), which states that for a person not residing in an excluded-time facility, the county of financial responsibility is the county in which the person resides, here Lac qui Parle.[2]

Minn.Stat. § 256G.07, subd. 3 (2002), states that if a recipient's case is terminated 30 days or fewer before the recipient applies in the new county, the county from which the recipient moved remains financially responsible for services until the person has lived in the new county for two months. Even if Martin was entitled to terminate its file on D.F. on July 31, 30

---

1. "Excluded" status is defined by Minn.Stat. § 256G.02, subd. 6 (2002), and generally includes time spent in out-of-home care facilities and other placements.

2. We note that while D.F. entered an excluded-time facility on August 31, at the time of application (August 29), he was living at home with his mother, which does not qualify as excluded time under Minn.Stat. § 256G.02, subd. 6 (2002).

days had not passed before D.F.'s mother applied for services in Lac qui Parle on August 29. Martin, it seems, should have been responsible for services provided to D.F. until he had spent two months in Lac qui Parle. But as we have just explained, D.F. had met this requirement by August 7. This is the time gap that distinguishes the present case from *T.W.* There, the move and the transfer of services were nearly simultaneous. *T.W.*, 627 N.W.2d at 103. The financial dispute arose during the same month, and T.W. had clearly not established residency in the new county at that time. Here, D.F. had lived in Lac qui Parle long enough to establish residency there at the time services were provided to him and the financial dispute arose. Because D.F. was an established resident of Lac qui Parle at the time he began receiving services in that county, Lac qui Parle must be financially responsible for his care.

## DECISION

The district court incorrectly determined that, under Minn.Stat. § 256G.02, subd. 4(e) (2002), Martin County remained financially responsible for services provided to D.F. Because D.F. had established residence in Lac qui Parle County by living there in nonexcluded status for more than two months, Minn.Stat. §§ 256G.02, subd. 4(b), and 256G.07, subd. 1, dictate that Lac qui Parle County must assume financial responsibility for those services.

**Reversed.**