*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2062**

Duluth Landfill Superior LLC,
Appellant,

vs.

Minnesota Pollution Control Agency,
Respondent.

**Filed August 29, 2016
Affirmed
Reyes, Judge**

St. Louis County District Court
File No. 69DUCV142966

William D. Paul, William Paul Law Office, Duluth, Minnesota (for appellant)

Lori Swanson, Attorney General, Adam Kujawa, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Reyes, Judge; and Jesson, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

Appellant challenges a district court order affirming a penalty issued by respondent based on appellant's removal of solid waste from its dumpster onto a concrete driveway after a customer failed to pay for the use of the dumpster. Appellant also

asserts that the $1,500 non-forgivable penalty imposed by the MPCA is not supported by the facts or law. We affirm.

**FACTS**

On July 17, 2014, T.H. contacted respondent, the Minnesota Pollution Control Agency (MPCA), regarding a solid-waste-dump complaint against appellant, Duluth Landfill Superior. T.H. informed K.G., an MPCA solid waste and hazardous compliance and enforcement officer, that a 30-yard rolloff[1] dumpster had been removed from the property that she was managing and cleaning out after an eviction, and the contents of the dumpster had been dumped onto the driveway. T.H. explained that the contents were dumped because she failed to pay appellant for its services.[2] T.H. also informed K.G. that she cleaned up the waste that same day by contacting another solid-waste-disposal company to deliver a dumpster and workers to pick up the waste. K.G. requested a written description of T.H.'s complaint and any pictures she had, which she sent to K.G. K.G. never investigated the scene where the solid waste was dumped because the waste was already in the newly acquired dumpster when he received the complaint. While K.G. admitted that it was not "routine" to rely on pictures rather than independently

---

[1] According to trial testimony, a rolloff is a large metal dumpster.
[2] T.H. testified that she had a previous business experience with appellant when she was renovating a property in Wisconsin. Appellant delivered a dumpster, picked it up, and disposed of its contents. T.H. failed to pay appellant for its services in that instance as well.

2

investigating the site, he had previously recommended that a penalty be imposed on a regulated party without conducting an independent investigation of the scene.[3]

After determining that there had been a violation, K.G. spoke with appellant who admitted to dumping the waste because T.H. failed to pay for its services. K.G. sent an alleged violation letter (AVL) to appellant and requested a response. K.G. stated that appellant's response to the letter affirmed that appellant dumped the solid waste, acknowledged that the action was inappropriate, and represented that in the future appellant would not dump waste for non-payment, but instead would dispose of the dumpster's contents according to the law. K.G. wrote a case development form (CDF), which summarized the case against appellant, outlined the specific violation and the penalties to be assessed. The CDF specified that appellant violated Minn. R. 7035.0800 (2015), the potential for harm was moderate, the deviation from compliance was moderate, and the violation was determined to be serious and willful. K.G. determined that, because the violation was serious, the penalty was non-forgivable.

Subsequently, the CDF was reviewed by S.P., an MPCA compliance coordinator, and nine individuals in a forum, which ensures consistent administration of MPCA violations. The forum unanimously agreed to the type of violation, determination, and penalty amount. Next, K.G. sent an administrative penalty order (APO) to appellant explaining the violation, corrective action, and penalty amount. On January 2, 2015,

---

[3] One of the examples K.G. noted was a burning case.

appellant filed for judicial review of the APO. The district court held a court trial and affirmed the MPCA's APO. This appeal follows.

## D E C I S I O N

"In reviewing decisions of administrative agencies, [an appellate court] is not bound by the district court's decision. [The appellate court] may conduct an independent examination of the administrative agency's record and decision and arrive at its own conclusions as to the propriety of that determination." *Signal Delivery Serv., Inc. v. Brynwood Transfer Co.*, 288 N.W.2d 707, 710 (Minn. 1980); *see also In re Fin. Responsibility for Mental Health Servs. Provided to D.F.*, 656 N.W.2d 576, 578 (Minn. App. 2003).

But "[w]here the [district] court reviewing an agency decision makes independent factual determinations and otherwise acts as a court of first impression, this court applies the clearly erroneous standard of review." *In re Hutchinson*, 440 N.W.2d 171, 175 (Minn. App. 1989) (citations and quotation omitted), *review denied* (Minn. Aug. 9, 1989). When the district court "conducts a *de novo* hearing, then appellate inquiry is limited to whether the district court's findings are clearly erroneous." *Fisher Nut Co. v. Lewis ex rel. Garcia*, 320 N.W.2d 731, 734 (Minn. 1982) (alteration in original).

## I. Appellant was required to transport the waste deposited in the rolloff dumpster despite T.H.'s refusal to pay appellant for services.

Appellant argues that both the MPCA and the district court erred in concluding that appellant's conduct violated Minn. R. 7035.0800 based on a plain reading of the rule.

4

More specifically, appellant argues that it had no duty to transfer T.H.'s debris in the rolloff dumpster when she failed to fulfill her promise to pay. We disagree.

Under Minnesota law, "the refuse collection service [is] responsible for . . . transportation of all solid waste accumulated at a premises . . . to a solid waste disposal, transfer, or processing facility that is authorized to accept the waste." Minn. R. 7035.0800, subp.1.

The MPCA found, and the district court agreed, that appellant dumped 30 yards of mixed municipal solid waste and demolition waste on the property that T.H. managed when appellant recovered the dumpster that T.H. failed to pay for. Both the MPCA and the district court determined that, based on appellant's conduct, it violated rule 7035.0800 and therefore the assessed $1,500 penalty was appropriate and justified.

Appellant does not argue that rule 7035.0800 is ambiguous, but rather appellant argues that a "plain reading" of the rule applies. We also discern no ambiguity. Therefore, we look to a plain reading of the rule.

Under a plain reading of rule 7035.0800, a refuse-collection service is responsible for transporting waste to an authorized solid-waste facility. *See id*. It is undisputed that appellant is a "refuse collection service" and that it failed to transport the waste accumulated at T.H.'s premises to an authorized waste facility. Therefore, we conclude that appellant violated rule 7035.0800. As such, the district court did not clearly err by affirming the MPCA's determination.

## II.     A non-forgivable penalty was justified.

Appellant next contends that the MPCA was not justified in imposing a non-forgivable penalty because the violation was neither willful nor serious.  Appellant further argues that the district court erred by failing to consider the "undisputed fact that [appellant's] dumpster was not watertight," and therefore there was no difference in potential harm between the contents being in the dumpster or on the concrete slab.  Appellant's arguments are unpersuasive.

Appellate courts review agency penalties under a deferential, abuse-of-discretion standard.  *In re Haugen*, 278 N.W.2d 75, 80 n.10 (Minn. 1979).  The district court's order is reviewed for an abuse of discretion "by determining whether the district court made findings unsupported by the evidence or by improperly applying the law."  *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007).  Under Minnesota law, the MPCA may issue orders requiring the correction of violations and assess monetary penalties up to $20,000.  Minn. Stat. § 116.072, subds. 1, 2 (2014).  The penalty must be forgiven so long as "the violation has been corrected or appropriate steps have been taken to correct the action."  *Id*., subd. 5(a) (2014).  But if the violation is serious, the MPCA "may issue an order with a penalty that will not be forgiven after the corrective action is taken."  *Id*., subd. 5(b) (2014).

## A.      The violation was willful.

Appellant's argument confuses the standard for willfulness with the standard for seriousness.  The MPCA uses the willful standard as a factor in determining the amount of the penalty.  *Id*., subd. 2(b)(1).  Here, the MPCA assessed a penalty of $1,500 for the violation, of which $750 was assessed as the base penalty, and $750 was assessed

6

because appellant's conduct was willful. Because appellant does not provide any argument supported by legal authority to dispute the amount of the penalty, this issue is waived, and we decline to address it. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997).

### B. The violation was serious.

Under Minnesota law conduct that constitutes a "serious" violation is not explicitly defined by statute. *See* Minn. Stat. § 116.072 (2014). However, under *Arrowhead Concrete Works, Inc. v. Williams*, "[a] violation rates as 'serious' if the enforcer ranks the 'potential for harm' factor or the 'deviation from compliance' factor as 'serious.'" 550 N.W.2d 883, 886 (Minn. App. 1996). But the MPCA's internal document, the CDF, contains a penalty-assessment-calculation section, which allows for an independent classification and rationale to determine the seriousness of the violation.

The MPCA ranked the potential for harm and the deviation from compliance as moderate, while the violation itself was classified as serious. The MPCA also reviewed the violation in its forum and agreed that the violation was serious. The forum reasoned that, because the waste was dumped in a residential area, "[t]here is a serious risk of kids, animals, or others [ ] getting into the waste" and had the waste been left on the concrete slab for a longer period of time, there was a "potential risk of leachate getting into the storm water drain."

In support of the classification of the violation as serious, K.G. testified to the following facts. "[P]aperwork violations," such as the failure to get a permit or maintain records, are usually considered non-serious violations. However, violations that have

7

actual or potential harm to human health or the environment are considered serious violations. Additionally, in assessing whether the violation was serious, K.G. stated that the waste was dumped "very close to a trout stream and where kids play and has the ability to go through and become a nuisance." Finally, the violation was serious because the transportation of solid waste to a facility authorized to accept the waste is a "cornerstone" rule. K.G. explained that lawful transportation of solid waste was a cornerstone rule because authorized facilities follow a strict process for disposal of waste, which does not occur when waste is dumped in the manner employed by appellant.

Appellant attempts to minimize its conduct by stating that the debris was only on the concrete for "a matter of hours." But the applicable standard is met by the risk of harm alone; actual harm need not ensue. *See id.* Similarly, appellant's argument that the dumpster's contents have the same potential for harm whether they are in the dumpster or on the concrete slab is unavailing, because the purpose of the dumpster is to keep the waste contained. Waste on the concrete slab creates a danger that people and animals may rummage through the visible waste. Waste confined in a dumpster creates a safeguard from this occurrence.

Because the record, through the agency's documents and the testimony at the district court hearing, supports the agency's determination that the violation was serious, the district court's decision to affirm the MPCA was not an abuse of discretion.

**Affirmed.**