Subdivision 1. Restriction. (a) For the purposes of implementing the waste management policies in section 115A.02 and metropolitan area goals related to landfill abatement established under this chapter, a person may not dispose of unprocessed mixed municipal solid waste generated in the metropolitan area at a waste disposal facility unless the waste disposal facility meets the standards in section 473.849 and:
(1) The waste has been certified as unprocessible by a county under subdivision 2; or
(2)(i) the waste has been transferred to the disposal facility from a resource recovery facility;
*319 (ii) no other resource recovery facility serving the metropolitan area is capable of processing the waste; and
(iii) the waste has been certified as unprocessible by the operator of the resource recovery facility under subdivision 3.
....
Subd. 2. County certification; office approval. (a) By April 1 of each year, each county shall submit an annual certification report to the office detailing:
(1) the quantity of waste generated in the county that was not processed prior to transfer to a disposal facility during the year preceding the report;
(2) the reasons the waste was not processed;
(3) a strategy for development of techniques to ensure processing of waste including a specific timeline for implementation of those techniques; and
(4) any progress made by the county in reducing the amount of unprocessed waste.
....
Subd. 3. Facility certification. The operator of each resource recovery facility that receives waste from counties in the metropolitan area shall certify as unprocessible each load of mixed municipal solid waste it does not process. Certification must be made to each county that sends its waste to the facility at intervals specified by the county. Certification must include at least the number and size of loads certified as unprocessible and the reasons the waste is unprocessible. Loads certified as unprocessible must include the loads that would otherwise have been processed but were not processed because the facility was not in operation, but nothing in this section relieves the operator of its contractual obligations to process mixed municipal solid waste.
....
Subd. 5. Definition. For the purpose of this section, waste is "unprocessed" if it has not, after collection and before disposal, undergone separation of materials for resource recovery through recycling, incineration for energy production, production and use of refuse-derived fuel, composting, or any combination of these processes so that the weight of the waste remaining that must be disposed of in a mixed municipal solid waste disposal facility is not more than 35 percent of the weight before processing, on an annual average.
The statute generally prohibits persons from disposing of unprocessed metropolitan waste unless a county or resource-recovery facility certifies the waste as unprocessible. Despite numerous amendments, it appears that the landfill-abatement statute was, for years, unenforced.
In 2005, oversight of section 474.848 was transferred to the MPCA. See 2005 Minn. Laws 1st Spec. Sess. ch. 1, art. 2, § 161, at 2171-72. By statute, the MPCA was required to revise the metropolitan long-range-policy plan for waste management. See Minn. Stat. § 473.149, subd. 1 (2018). In early 2011, the MPCA published a policy plan, and one of its objectives was to ensure compliance with section 473.848. Under section 473.848, subdivision 4, the MPCA was permitted to "adopt standards for determining when waste is unprocessible" for purposes of certification. The policy plan includes standards for making that determination: waste is "unprocessible when all reasonably available capacity within the [metropolitan area] processing system is fully utilized at 100 percent of its operating capacity." The geographic location of resource-recovery facilities is considered in determining "reasonably available capacity."
*320 In 2012, the legislature required the MPCA to prepare a report on how compliance with section 473.848 might be achieved. See 2012 Minn. Laws ch. 272, § 93, at 1125. The legislation stated that the MPCA could not require compliance with section 473.848 before February 15, 2013. Id. In October 2012, the MPCA submitted a report to the legislature. The report stated that the metropolitan landfills and resource-recovery facilities were "not in compliance with the restriction on disposal," and it proposed amendments to landfill permits "to restrict landfills from accepting unprocessed metropolitan [waste] unless the waste has been certified by the county as unprocessible."[2]
Pursuant to the landfill-permit strategy, the MPCA issued a permit to respondent on July 30, 2015, containing language drawn from section 473.848 :
The permittee shall not dispose of unprocessed mixed municipal solid waste generated in the metropolitan area at the facility unless:
(1) the waste has been certified as unprocessible by a county under [ section] 473.848, subdivision 2 ; or
(2)(i) the waste has been transferred to the disposal facility from a resource recovery facility;
(ii) no other resource recovery facility serving the metropolitan area is capable of processing the waste; and
(iii) the waste has been certified as unprocessible by the operator of the resource recovery facility under [ section] 473.848, subdivision 3.
The permit also stated that pursuant to section 473.848, subdivision 2, and the policy plan, "the determination to certify waste will be made by the [m]etropolitan [c]ounties through certification reports submitted to the MPCA. The MPCA will use these reports to determine whether the permittee is in compliance with the restriction on disposal requirement." Essentially, the MPCA's strategy was to allow for after-the-fact certification of waste by the counties and to use this retroactive-certification process to determine if landfills had actually disposed of uncertified waste.
On March 31, 2017, the MPCA issued an APO to respondent. The APO alleged that, in 2016, respondent disposed of 236,001 tons of unprocessed metropolitan waste at Pine Bend Landfill. The APO alleged that, during this same period, resource-recovery facilities serving the metropolitan area processed a combined total of 96,177 tons less than their total capacities. The APO stated that the counties certified only 830 tons of waste as unprocessible. From this information, the MPCA concluded that respondent violated section 473.848 and its landfill permit by accepting unprocessed, uncertified waste. The APO assessed a $ 20,000 "nonforgivable" penalty against respondent, the maximum amount allowed. See Minn. Stat. § 116.072 (2016). The APO was not based upon any specific loads or tons that were in violation of the disposal restriction, but rather the aforementioned aggregate statistics. As for the APO penalty, the violation was deemed to be "serious."
In May 2017, respondent petitioned the district court for review of the APO pursuant to Minn. Stat. § 116.072, subd. 7. Both parties moved for summary judgment. In April 2018, the district court granted summary judgment to respondent for two reasons.
*321 First, the court found that the MPCA "exceeded its authority when it issued an APO against [respondent] based on a violation of its [p]ermit and [ section] 473.848." Second, the court concluded that the MPCA "failed to demonstrate that it issued the $ 20,000 APO based on substantial evidence." This appeal followed.
ISSUES
I. Did the MPCA exceed its statutory authority under section 473.848 by issuing an APO against respondent?
II. Is either party entitled to summary judgment, or do genuine issues of material fact remain?
III. Are section 473.848 and the landfill permit unconstitutionally vague?
IV. Do section 473.848 and the landfill permit violate the Dormant Commerce Clause?
ANALYSIS
"On appeal from summary judgment, we review whether there are any genuine issues of material fact and whether the district court erred in its application of the law." STAR Ctrs., Inc. v. Faegre & Benson, L.L.P. , 644 N.W.2d 72, 76 (Minn. 2002). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." Id. at 76-77. We review de novo the district court's application of the law and whether a genuine issue of material fact exists. Id. at 77.
Minnesota's environmental-protection statutes give the MPCA "authority to issue APOs for violations of hazardous and solid waste laws." Arrowhead Concrete Works, Inc. v. Williams , 550 N.W.2d 883, 886 (Minn. App. 1996). The MPCA may issue orders requiring the correction of violations and assess monetary penalties up to $ 20,000. Minn. Stat. § 116.072, subds. 1, 2. The penalty must be forgiven so long as "the violation has been corrected or appropriate steps have been taken to correct the action." Id. , subd. 5(a). But if the violation is serious, the MPCA "may issue an order with a penalty that will not be forgiven after the corrective action is taken." Id. , subd. 5(b). What constitutes a "serious" violation is not explicitly defined by statute. See Minn. Stat. § 116.072. "On review of an [APO], the district court must determine whether the preponderance of the evidence shows that the violation cited in the [APO] occurred and whether that violation warrants the penalty ...." Arrowhead Concrete Works , 550 N.W.2d at 884.
I. The MPCA did not exceed its statutory authority under section 473.848 by issuing an APO against respondent.
We first address whether the MPCA was authorized to enforce the landfill permit and section 473.848 through the issuance of an APO. We review de novo whether an agency "has exceeded its statutory authority." In re Application of Minn. Power , 838 N.W.2d 747, 753 (Minn. 2013). "We resolve any doubt about the existence of an agency's authority against the exercise of such authority." Id. (quotation omitted).
"Administrative agencies are creatures of statute and they have only those powers given to them by the legislature." In re Hubbard , 778 N.W.2d 313, 318 (Minn. 2010). "An agency's statutory authority may be either expressly stated in the legislation or implied from the expressed powers." Id. To determine the extent of an administrative agency's powers, "we first look to the plain language of the authorizing statute." In re Valley Branch Watershed Dist. , 781 N.W.2d 417, 421-22 (Minn. App. 2010).
*322 We initially address the MPCA's contention that respondent forfeited its right to challenge the MPCA's enforcement authority. The MPCA asserts that respondent could have challenged the standards adopted in the policy plan, and because respondent did not timely make that challenge, respondent cannot now challenge the MPCA's enforcement authority. We disagree. Even collateral attacks on administrative agency orders in enforcement proceedings are generally proper if the governing statute does not state that the exclusive means of review is through direct appeal. State, by Spannaus v. Lloyd A. Fry Roofing Co. , 310 Minn. 528, 246 N.W.2d 696, 698 (1976) ("[A]ny action of an administrative agency which is in excess of its statutory power is subject to collateral attack."). Here, Minn. Stat. § 473.149, subd. 3(f) (2018), which provides for appellate review of a policy plan, does not state that it is the exclusive means of review. See also Minn. R. 7000.1800 (2017) (containing no indication that a petition for review of a permit is the exclusive means of review).
We therefore move to the question of statutory authority, which has two parts. First, did the MPCA have the authority to issue an APO for a violation of section 473.848 and the permit, and second, did respondent qualify under section 473.848 as "a person" who "dispose[d] of" uncertified, unprocessed waste. We first address whether the MPCA had the authority to issue an APO for a violation of section 473.848.
Section 473.848 is designed to implement "the waste management policies in section 115A.02," including "separation and recovery of materials and energy from waste," and "reduction in indiscriminate dependence on disposal of waste." Minn. Stat. §§ 115A.02(a), 473.848 (2018). Chapter 115A may be enforced via APOs. See Minn. Stat. § 115A.034 (2018) (listing section 116.072, the APO statute, as a means for enforcement). Because section 473.848 is an implementation arm of chapter 115A, and APOs may be used to enforce chapter 115A, it plainly follows that APOs may be used to enforce section 473.848. See also Minn. Stat. § 115.071, subds. 1, 6 (2018) (permitting APOs for the violation of permits issued by the MPCA under any law "enacted for the prevention, control, or abatement of pollution"). To the degree that the MPCA's authority to use APOs to enforce section 473.848 and the landfill permit is not expressly granted, it is certainly implied. See Hubbard , 778 N.W.2d at 321 (stating that a determination of implied authority requires analysis of the statutory scheme). Moreover, the MPCA was specifically charged by the legislature with developing a compliance plan for section 473.848, and the "agency" was not allowed to "require compliance" with section 473.848"before February 15, 2013," which is a clear indication that the MPCA has compliance authority over section 473.848. See 2012 Minn. Laws ch. 272, § 93, at 1125. The MPCA had the authority to issue an APO for a violation of section 473.848 and the permit.
We next address whether respondent qualifies under section 473.848 as "a person" who "dispose[d] of" uncertified, unprocessed waste. The MPCA argues that the plain language of section 473.848 makes clear that it applies to landfills. The MPCA focuses on the word "person," and notes that its statutory definition includes every entity other than the MPCA. Respondent focuses on the term "dispose," and asserts that the word limits the scope of section 473.848 to trash haulers and those getting rid of waste, thereby excluding landfills and entities accepting waste. The terms "person" and "dispose" are defined by statute, and based on those definitions, *323 we conclude that section 473.848 unambiguously applies to respondent.
The term "person" is broadly defined under Minn. Stat. § 116.06, subd. 17 (2018), to include human beings, as well as corporations and other entities. See Minn. Stat. § 473.121, subd. 36 (2018) (stating that definitions in chapter 116 "relating to waste" apply to chapter 473). Likewise, the term "dispose" is broadly defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any waste into or on any land ...." Minn. Stat. § 115A.03, subd. 9 (2018) (emphasis added); see Minn. Stat. § 473.121, subd. 36 (stating that definitions in section 115A.03"relating to waste" apply to chapter 473). By accepting waste from haulers for deposit or placement into its landfill, respondent disposed of the waste. But see Arrowhead Concrete Works , 550 N.W.2d at 885, 888 (rejecting argument that Arrowhead, a concrete block manufacturer, "disposed" of debris by placing it on the ground in an uncontrolled manner). Even if we were to determine that the terms "person" and "dispose" are ambiguous, we would defer to the MPCA's reasonable interpretation that the terms apply to respondent, as the MPCA is charged with administering the statute. See A.A.A. v. Minn. Dep't of Human Servs. , 832 N.W.2d 816, 823 (Minn. 2013) ("[W]hen a statute is ambiguous, we give deference to the administrative interpretation of the relevant statute by a state agency if the agency is charged with the responsibility of applying the statute on a statewide basis and its interpretation is reasonable.").
Respondent points to the 1989 amendment to section 473.848, replacing restrictions on landfills accepting waste with restrictions on persons disposing of waste, as an indication that the legislature intended to exclude liability for landfills. But no express exclusion was made, and the amendment could just as easily be read as an extension of liability beyond landfills, as broad definitions of "person" and "dispose" were in effect at the time of the amendment. Minn. Stat. §§ 115A.03, subd. 9, 116.06, subd. 8, 473.121, subd. 36 (1988). Respondent qualifies under section 473.848 as "a person" who "dispose[d] of" waste.[3]
II. The MPCA is entitled to partial summary judgment on the issue of whether respondent violated section 473.848 and the landfill permit, but a genuine issue of material fact remains over whether the APO penalty was warranted.
We next address whether genuine issues of material fact remain. As a threshold matter, the MPCA argues that the district court applied the wrong standard on summary judgment by requiring "substantial evidence." We agree. If a nonmoving party has the burden of proof on an issue, it does not need to show substantial evidence to withstand summary judgment, but merely sufficient evidence to allow reasonable persons to reach different conclusions on the issue. Schroeder v. St. Louis County , 708 N.W.2d 497, 507 (Minn. 2006) ; see DLH, Inc. v. Russ , 566 N.W.2d 60, 70 (Minn. 1997) (stating that the district court "must not weigh the evidence on a motion for summary judgment").[4]
*324 We first determine if a genuine issue of material fact remains on whether respondent violated section 473.848 and the landfill permit. The MPCA's evidence included an affidavit discussing an annual accounting of respondent's uncertified metropolitan waste disposal based upon respondent's own quarterly reports, deposition admissions stating that respondent accepted waste every day that it was open in 2016 and accepted uncertified waste, and affidavit evidence indicating that only a minimal amount of waste was actually certified as unprocessible.
Respondent challenges the counties' certification reports and asserts that more waste should have been certified as unprocessible. Respondent, however, fails to present evidence indicating that no violation occurred, that is, that respondent did not dispose of uncertified, unprocessed metropolitan waste. "When a motion for summary judgment is made and supported, the nonmoving party must present specific facts showing that there is a genuine issue for trial." Russ , 566 N.W.2d at 69 (quotation omitted). Because the MPCA supported its motion for summary judgment with evidence indicating that a violation occurred and respondent failed to present specific facts showing that no uncertified, unprocessed metropolitan waste was disposed of at respondent's landfill, the MPCA is entitled to partial summary judgment on the issue of whether respondent violated section 473.848 and the landfill permit.[5]
The district court concluded that there was no "specific evidence documenting which days or even weeks that [respondent] received [waste] or whether [respondent] received [waste] on days or weeks when there were shortages at the resource recovery facilities." But section 473.848 contains no requirement that the waste be disposed of on a particular day or week, and it contains no requirement that the waste be disposed of during a resource-recovery-facility shortage.[6] Section 473.848 prohibits disposal of unprocessed metropolitan waste unless the waste is certified as unprocessible by a county or resource-recovery facility. Respondent similarly argues that there is no "evidence to prove that any specific load of waste was accepted in violation of the [s]tatute." But the evidence certainly establishes that some violation occurred.
Although the MPCA is entitled to partial summary judgment on the issue of whether respondent violated section 473.848 and the landfill permit, a genuine issue of material fact remains regarding the seriousness of the violation and whether the penalty was justified. See Minn. Stat. § 116.072, subd. 7(b) ; Arrowhead Concrete Works , 550 N.W.2d at 888 (remanding for district court determination *325 as to whether "violation warrants the penalty assessed"). The district court never reached these issues. The MPCA's case-development form indicates that the MPCA deemed the APO violation to be serious and imposed a nonforgivable penalty because of respondent's failure to comply with section 473.848. Respondent argued that the county-certification process was flawed and more waste should have been certified as unprocessible. Respondent submitted evidence to support that assertion. While this evidence does not negate the fact that a violation occurred, it is relevant to the seriousness of the violation and whether the nonforgivable penalty was justified.
The MPCA asserts that it has ultimate authority over county certifications and that its approval of the 2016 county certifications renders them unimpeachable. We disagree. Under the plain language of Minn. Stat. § 473.848, subds. 1, 2, it is the counties that are given the authority to certify waste, not the MPCA. And, although the MPCA may approve or disapprove of a county's annual certification report, this annual review does not go to the merits of the county's certification. Rather, this limited authority merely permits the MPCA, in instances of disapproval, to open a dialogue with the county "to develop and implement specific techniques to reduce unprocessed waste," or in the case of consecutive disapprovals, to "develop specific reduction techniques that are designed for the particular needs of the county." Minn. Stat. § 473.848, subd. 2(b).
The MPCA is entitled to partial summary judgment on the issue of whether respondent violated section 473.848 and the landfill permit. However, given respondent's evidence of mitigating circumstances, a genuine issue of material fact remains on whether the $ 20,000 nonforgivable penalty for the violation is justified.
III. Section 473.848 and the landfill permit are not unconstitutionally vague.
Respondent offers two constitutional challenges, which were raised below but not addressed by the district court, as alternative bases to affirm the district court's grant of summary judgment. "We will affirm the judgment if it can be sustained on any grounds." Myers v. Price , 463 N.W.2d 773, 775 (Minn. App. 1990), review denied (Minn. Feb. 4, 1991). We address each of respondent's arguments in turn, and we begin with respondent's void-for-vagueness argument.
Respondent asserts that section 473.848 and the permit are unconstitutionally vague. Respondent contends that the statute is confusing because it is unclear who is required to certify waste as unprocessible, the counties are unsure how to make this unprocessible-waste determination, and it is unclear if section 473.848 requires certification of waste prior to disposal, or if retroactive certification is permissible.
"The general purpose of the void-for-vagueness doctrine is to assure that ordinary people are put on notice of what conduct is prohibited and to discourage arbitrary and discriminatory law enforcement." Minter-Weisman Co. v. Comm'r of Revenue , 520 N.W.2d 1, 4 (Minn. App. 1994), review denied (Minn. Sept. 28, 1994). More important than actual notice is the doctrine's requirement that the legislature establish minimal guidelines or standards to govern enforcement. Kolender v. Lawson , 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).
Here, the statute and permit are not unconstitutionally vague. Both clearly prohibit disposal of waste unless a county *326 or resource-recovery facility certifies the waste as unprocessible. The prohibited conduct is clearly defined. We do acknowledge that the statute is ambiguous regarding how county certification is obtained. Section 473.848, subdivision 1, by prohibiting waste disposal unless the waste "has been certified," suggests that waste must be certified prior to disposal. However, subdivision 1(1) references certification "under subdivision 2," which discusses "annual certification."[7] Given the statute's ambiguous language, we defer to the MPCA's reasonable interpretation that retroactive county certification is permitted. See A.A.A. , 832 N.W.2d at 823.
Respondent acknowledges that "[i]f the counties analyzed waste before it is landfilled as the law requires, [respondent] would always know if waste was 'unprocessible' or not and could make appropriate disposal decisions." In effect, respondent concedes that compliance could be assured if predisposal certification is obtained. In that vein, respondent could have relied on load-by-load certification from resource-recovery facilities. See Minn. Stat. § 473.848, subds. 1, 3. While mitigating circumstances may exist given the evidence of confusion over the county-certification process, the statute and permit are not unconstitutionally vague.
IV. Section 473.848 and the landfill permit do not violate the Dormant Commerce Clause.
Lastly, respondent argues that section 473.848 and the landfill permit violate the Dormant Commerce Clause because "the MPCA's entire enforcement scheme is ... nothing more than an indirect requirement that waste haulers deliver waste to [a] privately-owned [resource recovery] facility."
The Commerce Clause contains an implied negative command, called the Dormant Commerce Clause, restricting states from unduly burdening or discriminating against interstate commerce. Chapman v. Comm'r of Revenue , 651 N.W.2d 825, 832 (Minn. 2002). In determining whether section 473.848 and the landfill permit violate the Dormant Commerce Clause, we first determine whether the statute and permit facially discriminate against interstate commerce. United Haulers Assn., Inc. v. Oneida-Herkimer Solid WasteMgmt. Auth. , 550 U.S. 330, 338, 127 S.Ct. 1786, 1793, 167 L.Ed.2d 655 (2007) ; Swanson v. Integrity Advance, LLC , 870 N.W.2d 90, 93 (Minn. 2015). Respondent concedes that section 473.848 is facially neutral. Cf. Or. Waste Sys. v. Dep't of Envtl. Quality , 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994) (holding statute that charged higher fee for disposal of out-of-state waste was facially discriminatory).
Absent facial discrimination, the statute and permit are valid "unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." United Haulers Assn., Inc. , 550 U.S. at 346, 127 S.Ct. at 1797 (quotation omitted). Respondent fails to point to any specific burden on out-of-state economic interests, and conversely, the purported environmental interests of landfill abatement and recovery of materials and energy from waste have been recognized as compelling and legitimate. See Can Mfrs. Inst., Inc. v. State , 289 N.W.2d 416, 420 (Minn. 1979) ("[A] regulatory scheme designed to conserve resources, decrease pollution, and protect the environment unquestionably *327 deals with state interests of great magnitude.").
Respondent relies on C & A Carbone, Inc. v. Town of Clarkstown , and asserts that the statute and permit impermissibly direct waste to a private facility. 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). But respondent's reliance on Carbone is misplaced because Carbone involved an ordinance that required waste to be deposited at a specific designated site, thereby regulating interstate commerce. Id. at 383, 114 S.Ct. at 1677. The statute and permit at issue do not designate any specific facility. Section 473.848 and the landfill permit do not violate the Dormant Commerce Clause.
DECISION
The MPCA had the authority to issue the APO to respondent, and the MPCA is entitled to partial summary judgment on the issue of whether respondent violated section 473.848 and the landfill permit. However, because a genuine issue of material fact remains regarding whether the $ 20,000 nonforgivable penalty was warranted, we reverse and remand for further proceedings consistent with this opinion.
Reversed and remanded.

The MPCA's landfill-permit strategy was appealed in Waste Mgmt. of Minn., Inc. v. Minn. Pollution Control Agency , and this court held that the strategy was exempt from administrative rulemaking procedures because it "merely enforces section 473.848." No. A14-0122, 2014 WL 3892576, at *1 (Minn. App. Aug. 11, 2014).

Because we conclude that the MPCA had the statutory authority to issue the APO, we do not reach the MPCA's argument that the district court made improper findings in its statutory-authority analysis.

This court reviews final agency decisions in contested cases for "substantial evidence," under the Minnesota Administrative Procedure Act (MAPA), Minn. Stat. §§ 14.001 -.69 (2018). Minn. Stat. §§ 14.63, .69. A contested case is defined by MAPA as a "proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing."Minn. Stat. § 14.02, subd. 3. The APO did not arise from a "contested case," the MPCA did not appeal via writ of certiorari, and the MAPA substantial-evidence standard is inapplicable. See Minn. Stat. § 14.64 (stating that "[p]roceedings for review under sections 14.63 to 14.68 shall be instituted by serving a petition for a writ of certiorari").

Respondent claimed before the district court that no waste in the metropolitan area was unprocessed because, based on an annual average, metropolitan waste was reduced by over 65% after collection and before disposal. However, section 473.848, subdivision 5, plainly refers to the reduction of specific waste, not all metropolitan-area waste.

Section 473.848 does, however, require that waste certified by a resource-recovery facility not be disposed of unless "no other resource recovery facility serving the metropolitan area is capable of processing the waste."

In an unpublished opinion, Waste Mgmt. of Minn., Inc. , we stated that the temporal requirements of section 473.848 were "clear," but that decision was rendered prior to implementation of the permit strategy. 2014 WL 3892576, at *6.